UNITED STATES of America,
Plaintiff-Appellee,

v.

Anthony Leonard CUSENZA,
Defendant-Appellant.

No. 83–2830.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 19, 1984.

Decided Dec. 5, 1984.

Robert T. Coleman, Asst. U.S. Atty., Frederick J. Hess, U.S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Michael E. Squibb, San Diego, Cal., for defendant-appellant.

Before WOOD, Circuit Judge, PELL, Senior Circuit Judge, and CAMPBELL, Senior District Judge.[*]

HARLINGTON WOOD, Jr., Circuit Judge.

Defendant-appellant Anthony Leonard Cusenza was indicted with co-defendants James Robert Srader and Christopher Scott Goodson for his participation in a conspiracy to purchase and distribute marijuana. After negotiating with the United States Attorney, Cusenza pled guilty on August 1, 1983 to Counts I (conspiring to possess marijuana with an intent to distribute), V (traveling in interstate commerce to further an illegal activity), and XII (using a communications device in furtherance of a conspiracy). On September 30, 1983, the district court imposed a twelve-year sentence on Count I, a four-year sentence on Count V, and a four-year sentence on Count XII—the sentences to run concurrently.

Cusenza challenges both the convictions and the sentences. He argues that his guilty plea was invalid because the district court did not comply with Rule 11(c)(1) of the Federal Rules of Criminal Procedure. He also asserts that the sentencing hearing violated his due process rights because he had no notice that the United States Attorney intended to call a surprise witness and, therefore, no time to prepare meaningful rebuttal testimony. We reject both claims and affirm the judgment of the district court.

I.

Rule 11(c)(1) requires that the district court, before accepting a guilty plea, inform the defendant of the nature of the charge and determine whether the defendant understands the charge. Fed.R. Crim.P. 11. In the present case, the district court asked Cusenza if he had read the indictment, if he understood the indictment, and if he had ample time to discuss the charges with his lawyer. Cusenza answered "yes" to each of these questions. Later, after the United States Attorney had recited the factual basis for the charges, the following colloquy occurred:

> THE COURT: Now, Mr. Cusenza, you understand that basically that's what you are admitting to, that's what you are pleading guilty to?
>
> A. Yes, sir.
>
> THE COURT: Is that what you are admitting to?
>
> A. Yes sir.

Defendant asserts on appeal that this procedure did not satisfy Rule 11(c)(1) because the district court neither read the indictment to Cusenza nor explained the legal definition of conspiracy to him.

[*] The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, sitting by designation.

In *United States v. Gray*, 611 F.2d 194 (7th Cir.1979), *cert. denied*, 446 U.S. 911, 100 S.Ct. 1846, 64 L.Ed.2d 264 (1980), we rejected "a construction of 11(c)(1) which literally requires that the judge personally address the defendant and inform him of the nature of the charge" and instead adopted "a flexible and practical approach. which emphasizes whether the purpose to be served by the Rule has been furthered by the particular procedure utilized by the district court." *Id.* at 199. We noted that the colloquy necessary to satisfy Rule 11 "will vary from case to case depending on the complexity of the charges and the personal characteristics of the defendant—including age, education, intelligence, alacrity of his responses, and whether he is represented by counsel." *Id.* at 200 (citing *United States v. Wetterlin*, 583 F.2d 346 (7th Cir.1978), *cert. denied*, 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979)).

■ The defendant, citing *United States v. Frazier*, 705 F.2d 903 (7th Cir.1983), argues that this court has adopted a *per se* rule that "any noncompliance with Rule 11, Federal Rules of Criminal Procedure, is reversible error." *Id.* at 907. Defendant distinguishes *Gray* as a case analyzing the *method* of compliance and asserts that the present case involves a lack of compliance. This argument misses the point. A failure to satisfy Rule 11 is reversible error, but this court will apply the "flexible and practical approach" of *Gray* in determining whether 11(c)(1) was satisfied. Although we mused in *Frazier* that we might require more literal compliance with the language of Rule 11(c)(2)–(5), we reiterated that "*Gray* ... stands for the proposition that there are several ways a court can inform the defendant of the nature of the charge to which the plea is offered." *Frazier*, 705 F.2d at 907 n. 5. We therefore apply the "flexible and practical approach" to the present case and look at the total circumstances surrounding the plea to determine whether Cusenza understood the nature of Counts I, V, and XII.

■ Three portions of the change of plea proceedings are relevant to the 11(c)(1) issue. First, the district court asked Cusenza a series of questions that the court may have erroneously believed to satisfy Rule 11(c)(1). That colloquy was as follows:

> [The Court]  Have you read the indictment in this case?
>
> [Cusenza]  Yes, sir.
>
> Q.  Particularly have you read Counts I, V and XII?
>
> A.  Yes, sir.
>
> Q.  Do you understand them?
>
> A.  Yes.
>
> Q.  Do you have any questions at all about what you are charged with in those counts?
>
> A.  No, sir.
>
> Q.  Have you had ample time to go over them with your lawyer?
>
> A.  Yes.
>
> Q.  And have you discussed them with your lawyer?
>
> A.  Yes.

The district court erred by referring to the charges as Counts I, V, and XII rather than reading the indictment to the defendant or at least referring to the charges in a substantive and meaningful way; merely referring to the charges by number does not inform the defendant of the nature of the charge. Moreover, although this court has stated that representation by counsel is a factor to consider in Rule 11 cases, *see, e.g., Wetterlin*, 583 F.2d at 351, representation does not, by itself, satisfy Rule 11. Nor does asking the defendant if he has discussed the charge with his attorney satisfy Rule 11, since the attorney may have inadvertently misstated the law or overlooked a defense. *See Majko v. United States*, 457 F.2d 790, 791 (7th Cir.1972). *Cf. United States v. Thompson*, 680 F.2d 1145, 1153–55 (7th Cir.) (Rule 11(c)(1) is satisfied when the defendant tells the court that he has discussed the charge with his counsel and counsel then elaborates on the nature of the charge), *cert. denied sub. nom., Williams v. United States*, 459 U.S. 1089, 103 S.Ct. 573, 74 L.Ed.2d 934 (1982). Rule 11(c)(1) places an affirmative duty on

the district court to ensure that the defendant understands the nature of the charge. The presence of Cusenza's attorney and the court's questions about consulting with an attorney are contributing, but not sufficient, factors in our analysis.

The recitation of facts by the United States Attorney, ostensibly for the purpose of satisfying the requirements of Rule 11(f), provides a second suggestion that Cusenza understood the nature of Counts I, V, and XII.[1] The prosecutor described telephone conversations between a government witness in Illinois and co-defendant Goodson in California. The prosecutor further described how Goodson and Cusenza flew from California to St. Louis, Missouri in order to discuss purchasing marijuana with the government witness and undercover FBI and DEA agents. Finally, he described the agreement, Cusenza's long-distance telephone call to co-defendant Srader, and Srader's arrival with the money. When the prosecutor finished relating these facts, the court asked Cusenza if he understood "that basically that's what you are admitting to, that's what you are pleading guilty to." Cusenza answered, "Yes, sir."

Third, after the United States Attorney's recitation of facts and the defendant's admission of those facts, the court asked Cusenza a series of questions about his part in the conspiracy.

[The Court] Mr. Cusenza, when you were arrested there was some sixty thousand dollars taken from you, you or Mr. Srader, I don't remember who it was.

[U.S. Attorney] It was on a table.

THE COURT: In the motel room.

MR. CUSENZA: Are you asking, Judge, where the money came from or who brought the money?

THE COURT: Where did the money come from?

A. Came from Mr. Srader.

THE COURT: Srader?

A. Yes, sir.

THE COURT: Where did you fit into this picture?

A. Merely as a middle man capacity.

THE COURT: Do you know where Mr. Srader got the money?

A. No, sir.

* * * * * *

Q. What was your part in [the deal]?

A. Just to get the two parties together.

Q. Which two parties?

A. Mr. Srader and the person that Mr. Goodson had introduced me to.

Q. I thought that was Mr. Goodson's job to get the parties together?

A. It's fairly obvious, Your Honor, that I came there with Mr. Srader, I had Mr. Srader come and then before Mr. Goodson introduced me to these people that were supposed to supply marijuana.

Considering these three portions of the change of plea proceedings, we believe that the defendant—a twenty-nine year old with a high school education and "a little bit of college"—understood the nature of Counts I, V, and XII. We recognize that this court stated in *Wetterlin* that the "charge of 'conspiracy' is not a self-explanatory legal term or so simple in meaning that it can be expected or assumed that a lay person understands it." 583 F.2d at 350. But *Wetterlin* involved a very complex conspiracy to defraud a public board and to bribe public officials; the conspiracy here is a fairly simple agreement to purchase and distribute marijuana. Thus, in terms of complexity, the conspiracy in this case is more like the aiding and abetting a kidnapping charge in *Gray* than the twenty-five page conspiracy charge in *Wetterlin*. In *Wetterlin*, the government also failed to establish a factual basis for the conspiracy charge. Thus the district court sentencing Wetterlin could not have relied on the defendant's assent to the statement of facts and determined that Wetterlin understood

1. We held in *Gray* that a court could rely on the prosecutor to describe the nature of the charge and the maximum penalty. *Gray,* 611 F.2d at 199. Thus we can consider the prosecutor's recitation of facts in determining whether the district court's procedure furthered the purposes of Rule 11(c)(1).

the nature of the charge. 583 F.2d at 352 (finding violation of Rule 11(f)). In the present case, the prosecutor related the facts, the court asked the defendant if he admitted those facts (which Cusenza did), and the court then asked Cusenza a series of questions about his role in the conspiracy.[2] Therefore, although we find that the district court failed to follow the preferred method of satisfying Rule 11(c)(1),[3] we hold that, on the particular facts of this case, the purpose underlying the rule was furthered because Cusenza understood the nature of Counts I, V, and XII when he pled guilty.

## II.

Defendant also contends that the sentencing procedure violated his due process rights because he had no notice that Sergeant Robert J. Plumbley of the San Diego County Sheriff's Office would testify and therefore no opportunity to prepare a meaningful rebuttal. Because the nature of the testimony is relevant to our analysis below, we will summarize Sergeant Plumbley's testimony.

Plumbley testified that he first heard of Anthony Cusenza when he (Plumbley) received several citizen complaints in May, 1982 about suspected narcotics dealings at 705 Rall Place, Selana Beach, California. The citizens described two men living at 705 Rall Place and furnished license plate numbers of the residents' cars, which proved to be registered to Cusenza's father. Plumbley later received information from Cusenza's neighbors that one man had moved out and only Cusenza and a woman were residing at 705 Rall Place. In addition to these complaints, Plumbley began to stop occasionally and observe the activities at 705 Rall Place.

Plumbley also testified that, by coincidence, on May 1, 1983, the day Cusenza and his two co-defendants were purchasing marijuana from undercover federal agents in Illinois, he (Plumbley) stopped at 705 Rall Place and observed two parked cars, a yellow Cadillac, which he believed to be registered to Cusenza's mother, and a white Toyota registered to co-defendant Christopher Goodson. After learning on May 2, 1983 of the undercover operation in Illinois, Plumbley obtained a "Fourth Waiver"[4] and conducted a search of 705 Rall Place. He found male and female clothing (the size of the male clothing matching Cusenza's size), Cusenza's driving or racing license, Cusenza's Social Security card, and mail addressed to Cusenza at 705 Rall Place and at prior addresses Cusenza was known to use. Plumbley also found a number of items evidencing large dealings in hashish and marijuana, including (1) thirty yellow vinyl squares containing hashish residue, (2) 114 cotton bags containing hashish residue, (3) a .30 caliber rifle and

---

2. This dialogue distinguishes this case from *United States v. Frye*, 738 F.2d 196, 201 (7th Cir.1984). In *Frye*, the district court asked the two defendants, who clearly appeared to have different degrees of involvement in the check-kiting scheme but who were represented by the same counsel, a series of questions requiring only "yes" or "no" answers. The present case, however, involved no possible conflict of interest for the attorney, and the answers to the district court's questions "would lead a reasonable person to believe that the defendant understood the nature of the charge." *Id.* at 201 (quoting *United States v. Thompson*, 680 F.2d at 1155).

3. This court has repeatedly urged the district courts to take a few extra minutes and "completely and literally proceed step by step through the technical requirements of Rule 11." *United States v. Gray*, 611 F.2d at 202; *see also*

*United States v. Fels*, 599 F.2d 142, 150 (7th Cir.1979) (Pell, J., dissenting). Perhaps the surest way to avoid Rule 11 problems is to follow the guidelines set out in the Federal District Court Bench Manual. In addition, the United States Attorney should immediately alert the court of any omissions or misstatements, thus allowing the court to correct them before adjourning the hearing. *See, e.g., United States v. Keller*, 594 F.2d 939, 941 (3d Cir.1979) (prosecutor stated the maximum sentence which judge incorrectly stated).

4. A "Fourth Waiver" is a waiver signed by Cusenza as part of a guilty plea to criminal charge in California. By it, he agreed to submit his person, property, place of residence or abode, vehicle, and personal effects to a search at any time with or without a search warrant by the probation officer or a law enforcement officer.

a .32 caliber pistol, (4) two scales, and (5) notes showing the gram amounts, dollar amounts, and names of purchasers (some of whom Plumbley recognized as connected with past and current drug investigations). Following this testimony, the court permitted defense counsel to cross-examine Plumbley.

■ This court has previously noted that there are few limitations on the type of information a district court can consider when sentencing a defendant. *United States v. Marshall,* 719 F.2d 887, 891 (7th Cir.1983) (citing 18 U.S.C. § 3577). Nonetheless, a criminal defendant has a constitutional right to be sentenced on accurate information, *see Townsend v. Burke,* 334 U.S. 736, 740–41, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948); *United States v. Scalzo,* 716 F.2d 463, 466 (7th Cir.1983), and this court will vacate a sentence if the district court relied on improper factors. *See United States v. Harris,* 558 F.2d 366, 374–77 (7th Cir.1977) (defendant sentenced on the basis of hearsay-on-hearsay evidence). In challenging a sentence for reliance on improper factors, a defendant must show that it is *not improbable* that the district court was influenced by the improper factors. *Id.* at 375. Therefore, because it appears probable, if not certain, that the district court relied on the testimony of Sergeant Plumbley in sentencing Cusenza, we must consider whether the testimony was improper.

■ As defendant concedes, it is not *per se* improper for a district court to rely on hearsay evidence in sentencing a defendant. *Scalzo,* 716 F.2d at 469. The judge may properly consider hearsay evidence of other criminal activity by the defendant, in some cases even if the defendant has pleaded not guilty to related charges. *Marshall,* 719 F.2d at 891–92; *United States v. Johnson,* 507 F.2d 826, 829–30 (7th Cir.1974), *cert. denied,* 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 103 (1975). Moreover, although fundamental fairness requires that the court give the defendant an opportunity to rebut hearsay evidence that the defendant claims is erroneous, *see Harris,* 558 F.2d at 374, this opportunity does not mean that the defendant can convert the sentencing proceeding into a full-scale evidentiary-type hearing. *United States v. Stephens,* 699 F.2d 534, 537 (11th Cir.1983).

■ Defendant argues that his due process rights were violated because he had no meaningful opportunity to rebut the testimony of Sergeant Plumbley. Cusenza concedes that the government could, without notice to him, offer the testimony of Sergeant Plumbley. *See United States v. Bouye,* 688 F.2d 471, 473–75 (7th Cir.1982) (government need not disclose the names of witnesses to defendant); *see also Conference Committee Notes on Proposed Rule 16(a)(1)(E),* H.R.Rep. No. 94–414, 94th Cong. 1st Sess. 12, *reprinted in* [1975] U.S. Code Cong. & Admin. News 674, 713, 716 (rejecting proposed rule that would require the government to disclose the names of witnesses to the defendant). Defendant further concedes that, as discussed above, the court may consider hearsay testimony. He argues, however, that Plumbley's testimony was unexpected, that there was no reason for him or his counsel to expect this "surprise" testimony,[5] and that he therefore had no meaningful opportunity to prepare and conduct a rebuttal.[6]

---

5. Although we base our holding on the defendant having an adequate opportunity to rebut any hearsay allegations, we join with the district court in questioning whether this testimony was a "surprise." It seems unlikely that the defendant did not know of either the search of 705 Rall Place, where several items of identification were found, or the search of his room in his parents' house, where he claimed to be living. Moreover, regardless of whether the defendant knew of the search, a defense attorney has no right to rely on the government's decision not to offer testimony at the sentencing hearings of co-defendants as a failproof sign that the government will not offer testimony at the defendant's sentencing hearing. The prosecutor may, in his discretion, decide what he believes to be the most effective strategy for a sentencing hearing.

6. We note that defense counsel missed his first and most logical chance to offset any element of surprise: counsel never asked for a recess or a continuance. We need not decide whether this

Reviewing the transcript of the sentencing hearing, we conclude that the defendant received all process he was due.

First, the critical elements of Plumbley's testimony were Plumbley's personal observations rather than hearsay. The need for an opportunity to rebut is greatest when the prosecutor offers hearsay allegations, which are, by their nature, prone to error or inaccuracy. *Harris*, 558 F.2d at 374. Here, Plumbley testified that *he* observed co-defendant Goodson's car at 705 Rall Place on the same day that Goodson and Cusenza were in Illinois trying to buy and resell marijuana. Furthermore, Plumbley found the items linking Cusenza to 705 Rall Place on May 2, 1982 (the licenses, clothing, Social Security card, and mail) and Plumbley also found the evidence of drug dealing. This evidence, by itself, could support the district court's conclusion that Cusenza was involved in drug sales at 705 Rall Place. Because the testimony consisted mainly of first-hand observations, allowing defense counsel to cross-examine Plumbley and allowing defendant to comment on the evidence provided an adequate opportunity to expose weaknesses in Plumbley's testimony.[7] *Cf. Gholson v. Estelle*, 675 F.2d 734, 738–39 (5th Cir.1982) (no adequate opportunity to cross-examine psychiatrist who was a surprise government witness at capital punishment sentencing). The district court could properly rely on these portions of Plumbley's testimony in sentencing Cusenza.

■ Assuming the district court relied on the hearsay portions of Sergeant Plumbley's testimony, the defendant had an adequate opportunity to rebut that hearsay. The hearsay consisted of statements by neighbors to Plumbley that they suspected that narcotics sales were occurring at 705 Rall Place and that Cusenza and a woman were living together at that address up to May 2, 1983, the time of the search. The defendant, on the other hand, told the district court that he had broken up with the woman and had moved out of the house before Plumbley searched the house. Thus the issue became whether Cusenza still lived at 705 Rall Place at the time of the search.[8]

The defendant had an adequate opportunity to offer evidence on this issue. First, he made the statement to the court that he had moved out before the search. During cross-examination by the defense counsel, Plumbley admitted that he had only seen Cusenza at the Rall address on two occasions. And, since Cusenza's parents were present at the sentencing hearing and Cusenza claimed he had moved in with them when he left 705 Rall Place, defense counsel could have called Mr. and Mrs. Cusenza to confirm their son's story. Because the defendant's own statement and possible testimony of his parents was available to the defendant despite the "surprise" testimony of Sergeant Plumbley, we hold that the defendant had an adequate opportunity to rebut the hearsay elements of Plumbley's testimony.[9] *See Stephens*, 699 F.2d

failure to request a recess or continuance constitutes a waiver, however, because we hold that the defendant had an opportunity to rebut. *See Harris*, 558 F.2d at 375 (sentence relief will not be granted if defendant fails to deny the truth of the hearsay information at the sentencing hearing); *cf. Smith v. Estelle*, 602 F.2d 694, 701 n. 8 (5th Cir.1979) (failure to request a continuance is not a waiver in capital punishment case), *aff'd on other grounds*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).

**7.** On cross-examination, Plumbley admitted that he had only seen Cusenza at 705 Rall Place on two occasions.

**8.** Defense counsel also suggested that he would have liked to have offered testimony on other

uses of the cotton bags Plumbley found at 705 Rall Place. Given the hashish residue found in the bags, however, any other possible uses became irrelevant.

**9.** This decision should not be read as a license for prosecutors to withhold prejudicial information from the presentence report so that they may surprise the defendant at the sentencing hearing. Rather, the United States Attorney should cooperate with the probation service of the court to ensure that the presentence report accurately reflects all that is known about the defendant at the date of the report. *See* Fed.R. Crim.P. 32(c)(2). By this process, the trial court can determine what parts, if any, of the presentence report should be withheld from the defendant until the sentencing hearing. *See, e.g.,*

at 537 (fundamental fairness does not give defendant a right to a full trial-type sentencing hearing).

For the foregoing reasons, the convictions and sentences are AFFIRMED.

---

*United States v. Scalzo,* 716 F.2d at 467–68 (judge informed defendants at sentencing hearing of a confidential portion of the presentence report).