**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lewis DARLING, Defendant-Appellant.**

No. 84–1215.

United States Court of Appeals,
Seventh Circuit.

Argued April 9, 1985.

Decided July 3, 1985.

Rehearing Denied Aug. 30, 1985.

Geraldine R. Fehst, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Bruce H. Bronstein, Chicago, Ill., for defendant-appellant.

Before WOOD and FLAUM, Circuit Judges, and PELL, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

This is a direct criminal appeal which challenges the district court's failure to comply with the requirements of Rule 11 of the Federal Rules of Criminal Procedure in accepting defendant-appellant Darling's guilty pleas.

## I.

On August 11, 1983, a grand jury returned a fifteen-count indictment against Darling charging him with mail fraud in violation of 18 U.S.C. § 1341. Two schemes gave rise to the charges: the first was a scheme to defraud various insurance companies through the staging of automobile accidents and the submittal of false claims to those companies; the second was a scheme to defraud the United States through the submittal to the Internal Revenue Service of false tax returns. On September 7, 1983, Darling entered a plea of not guilty. On December 7, 1983, he withdrew that plea and, pursuant to an agreement with the government, pleaded guilty to all three counts of a superseding information charging him with two counts of mail fraud in violation of 18 U.S.C. § 1341

and one count of conspiracy to defraud the IRS in violation of 18 U.S.C. § 371.[1] Counts I and II of the information charged Darling with devising and participating in a scheme to defraud six named insurance companies by staging automobile accidents and then filing false claims on behalf of fictitious persons for lost wages, personal injuries, and property damage. It was alleged that Darling established a mailing address for two companies, Empire Realty and Accountax, which were used to provide false wage loss information to the insurance companies. For the purpose of executing this scheme, Darling twice utilized the United States Mail to send a fraudulent medical bill and a letter, contents unspecified, to the Travelers Insurance Company. Count III charged Darling with conspiring with others known and unknown to the United States Attorney to defraud the United States by preparing and filing false income tax returns on behalf of nonexistent businesses allegedly owned by Darling and his co-conspirators; the false returns claimed business losses and sought refunds in excess of $200,000. Two overt acts were set forth in the information: (A) between January 12, 1981 and January 18, 1981, Darling prepared and filed five false federal income tax returns in the name of "Charles White" claiming refunds totalling $24,805; and (B) between January, 1981 and July, 1981, Darling prepared false tax returns for fourteen named individuals. The district court accepted Darling's pleas of guilty to all three counts and set sentencing for January 20, 1984.

On January 20, 1984, counsel informed the court that Darling wanted to withdraw the guilty pleas; the bases for this oral motion were that Darling was not properly advised of the exact nature of the charges and that he was not guilty of the charges. The court ordered Darling's attorney to file a written motion to withdraw the guilty pleas by January 25, 1984. At a subse-

---

**1.** The plea agreement was governed by Rule 11(e)(1)(C). The parties agreed that the appropriate sentence was ten years incarceration "or such lesser sentence deemed appropriate" by the court. Each party remained free to recommend an appropriate sentence within the ten-year maximum sentence. All remaining counts of the indictment were to be dismissed upon sentencing on the pleas of guilty to the three-count information.

quent hearing, counsel indicated that Darling no longer desired to withdraw the pleas. Darling was then sentenced in accordance with the plea agreement to consecutive terms of five years imprisonment on Count I and Count II. He also received five years probation on Count III to run consecutively to the ten-year term of incarceration.

## II.

Darling's major argument on appeal is that the court did not comply with Rule 11(c)(1) because it failed to inform him of and determine that he understood the nature of the charges to which he was pleading guilty. He also contends that his pleas to the charges lacked adequate factual bases. *See* Fed.R.Crim.P. 11(f).

We begin our analysis with a review of the relevant portions of the change of plea proceedings. At the hearing Darling's attorney waived the formal reading of the information; he then informed the court that he and Darling had had "a number of discussions [that] morning" about the counts contained in the information and that Darling denied he was guilty of overt act A in Count III. Specifically, Darling denied filing fraudulent tax returns in the name of "Charles White."

The court proceeded to ascertain that Darling was thirty-six-years-old and had a GED. The court further ascertained that Darling was satisfied with counsel's representation and that Darling had had ample opportunity to discuss the charges with counsel. When asked by the court if he understood the charges against him, Darling responded affirmatively. The court made no attempt to explain the charges to Darling.

The government then recited the factual bases for the charges against Darling. With respect to Counts I and II, the government stated that Darling established a company named Empire Realty which supplied fraudulent wage loss information for approximately twenty-two insurance claims. Darling also "was associated with and responsible for" a company named Ac-countax which also supplied fraudulent wage loss information. The mailings were in furtherance of fraudulent claims filed on behalf of two individuals stemming from an accident in August, 1981; the wage loss information in these claims was supplied by Empire Realty and Accountax. With respect to Count III, the government stated that Darling prepared and filed with the IRS forty to fifty fraudulent tax returns for individuals on which he claimed fictitious business losses. Darling charged these individuals a percentage of the tax refund that they obtained. Darling also prepared five fraudulent tax returns in the name of "Charles White;" the government would establish that Darling's handwriting graced these returns. Noting that Darling denied that he was guilty of overt act A, the court asked if counsel agreed that the remaining factual basis was sufficient to support a conviction on Count III. They did.

The following colloquy between the court and Darling then took place:

THE COURT: Mr. Darling, you have heard Mr. Raphaelson at some length about, essentially, two kinds of schemes that you got involved in. Did you do what he said you did?

THE DEFENDANT DARLING: Yes, sir.

THE COURT: Tell me in your own words what it is that you did with respect to that accident business?

THE DEFENDANT DARLING: I prepared some fraudulent wage loss forms.

THE COURT: Okay. And you did that for the purpose of getting insurance settlements, which were not otherwise properly forthcoming; is that the idea?

THE DEFENDANT DARLING: Yes, sir.

THE COURT: And you did that in a number of instances?

THE DEFENDANT DARLING: Yes.

THE COURT: Did you create some entity that did not otherwise exist for the sole purpose of preparing wage losses? Did you make up this business—this real-

ty company—so that you could have some source for the wage loss information?

THE DEFENDANT DARLING: No, I did not do that myself, no.

THE COURT: Pardon?

THE DEFENDANT DARLING: No, I did not.

THE COURT: You did not do that?

THE DEFENDANT DARLING: No.

THE COURT: Did you supply phony wage loss statements?

THE DEFENDANT DARLING: Yes, sir.

THE COURT: And you caused them to be submitted to the insurance company?

THE DEFENDANT DARLING: Yes.

THE COURT: You knew they were phony, right?

THE DEFENDANT DARLING: Yes.

THE COURT: Now, insofar as the income tax aspect of this case, what you got involved in was preparing some phony returns?

THE DEFENDANT DARLING: Yes.

THE COURT: And you were taking a piece of the refunds; is that the idea?

THE DEFENDANT DARLING: Yes.

THE COURT: And you knew those returns were phony when they were being submitted?

THE DEFENDANT DARLING: Yes.

THE COURT: But you deny that you used the name Charles White and personally got this $24,000.00?

THE DEFENDANT DARLING: Yes, I do.

THE COURT: That is really not essential to Count Three; and since I believe Mr. Darling has admitted his conduct and his guilt as to the rest of Count Three, I find no legal impediment in accepting the plea of guilty as to Count Three.

The court then accepted all pleas.

Rule 11(c)(1) places an affirmative duty on the district court to ensure that the defendant understands the nature of the

charges. The colloquy necessary to satisfy Rule 11 "will vary from case to case depending on the complexity of the charges and the personal characteristics of the defendant including age, education, intelligence, alacrity of his responses, and whether he is represented by counsel." *United States v. Gray*, 611 F.2d 194, 200 (7th Cir.1979), *cert. denied*, 446 U.S. 911, 100 S.Ct. 1840, 64 L.Ed.2d 264 (1980) (citing *United States v. Wetterlin*, 583 F.2d 346 (7th Cir.1978), *cert. denied*, 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979)).

In recent cases this court has admonished district courts to adhere strictly to the requirements of Rule 11 in accepting guilty pleas. *See, e.g., United States v. Cusenza*, 749 F.2d 473, 477 n. 3 (7th Cir. 1984). We found in *Cusenza* that the court erred in failing to read the indictment or explain the nature of the charges to the defendant and reiterated that asking the defendant if he has discussed the charges with his attorney does not satisfy the court's affirmative duty to inform the defendant of and determine that he understands the nature of the charges against him. *Id.* at 475–76. We concluded, however, that the prosecutor's recitation of the factual bases for the charges and the court's questions on the role the defendant played in the conspiracy satisfied the purpose underlying Rule 11(c)(1). The totality of the circumstances established that the defendant understood the nature of the charges.

■ The guilty plea to the conspiracy count in this case cannot be so salvaged. We conclude that the district court failed in its affirmative duty to inform Darling of and determine that he understood the nature of the conspiracy charge. Count III of the information charged Darling with conspiring to defraud the United States by preparing and filing fraudulent federal income tax returns. The nature of the charge in Count III was never discussed.[2] The term "conspiracy" was never men-

---

**2.** The government notes the reading of the information was waived. We have stated that this does not relieve the judge of his duty under

Rule 11 to inform the defendant of the nature of the charges and to determine that he understands them. *Wetterlin,* 583 F.2d at 350 n. 6.

tioned by the district judge; the judge made no effort to explain the law of conspiracy either generally or by reference to the specific charge in this case. *See United States v. Wetterlin,* 583 F.2d at 350. The judge relied totally on Darling's representations that he had discussed the charges with his attorney and that he understood the charges. Contrary to the government's assertion, Rule 11(c)(1) is not satisfied by affirmative answers to the court's inquiries whether the defendant has discussed the charges with his attorney and whether the defendant understands the charges. *Id.* (citing *Majko v. United States,* 457 F.2d 790 (7th Cir.1972)); *Cusenza,* 749 F.2d at 475.

■ Courts, including this one, have found a district judge's failure to comply with Rule 11(c)(1) to be harmless error where it can be said from a review of the proceeding that the defendant nevertheless understood the charges. Thus, if the prosecutor's statement adequately sets forth all elements of the offense and the conduct of the defendant that constitutes the offense, the defendant's admission that the allegations are true is sufficient evidence that he understands the charge. Similarly, if the defendant's description of what he has done accurately describes the offense charged, his statement may be sufficient evidence of his understanding. *See Cusenza,* 749 F.2d at 476 (prosecutor adequately described conspiratorial agreement and overt acts; defendant admitted to them; defendant adequately described his middleman role in conspiracy); *Gray,* 611 F.2d at 200 (defendant's statement of his partic-

ipation in kidnapping contained description of all elements of offense); *United States v. Coronado,* 554 F.2d 166, 173 (5th Cir. 1977) (prosecutor adequately described elements of conspiracy engaged in by defendant and defendant admitted allegations were true); *cf. United States v. Boatright,* 588 F.2d 471, 474–75 (5th Cir.1979) (factual summary by prosecutor contained no description of agreement between defendant and co-conspirators to engage in gun business without a license; defendant admits only to substantive offense).

■ In this case, we find the prosecutor's statement of the factual basis of the conspiracy charge and the court's subsequent colloquy with Darling insufficient evidence that Darling understood the charge. The prosecutor asserted that Darling prepared and filed with the IRS fraudulent tax returns on behalf of forty to fifty individuals claiming fictitious business losses. He further asserted that Darling prepared five fraudulent tax returns in the name of Charles White. Although the prosecutor adequately summarized the overt acts charged, his statement did not include reference to agreements between these individuals and Darling to file the false returns, the essence of conspiracy. Only from the information do we know that each of the individuals on whose fictitious company's behalf Darling prepared and filed tax returns claiming business losses was alleged to be a co-conspirator. Additionally, there was no mention of the tax preparation service set up by Darling and Wilbert Williams, the sole person referred to as a co-conspirator in the plea agreement.[3]

---

**3.** The individuals on whose behalf Darling filed the false tax returns were referred to as "clients" in the plea agreement:

As charged in Count Three, during the period January through July of 1981, defendant conspired with other persons, including Wilbert Williams, to falsify federal income tax returns and thereby obtain tax refunds to which defendant and his co-conspirators were not entitled. The government's proof would show that defendant Wilbert Williams operated a tax preparation service at 240 E. 103rd Street in Chicago, called "Accountax." Defendant prepared tax returns for the clients of

Accountax, falsely stating on Schedule C's that the clients had incurred business losses. (Some of defendant's clients are listed in Overt Act b of Count Three.) In most instances, the alleged businesses did not exist. In those cases where a client of defendant did operate a business, the business's losses were grossly exaggerated. Defendant prepared more than 50 such false and fraudulent tax returns, which generated tax refunds in excess of $180,000. Defendant charged his clients a percentage of the tax refund he secured for them, generally between 10 and 50 percent, but occasionally higher. Using the alias

Although the omission from the factual basis of the term "conspiracy" is not determinative, it is only from outside sources that we know that Darling was charged with conspiracy and not the underlying substantive offense. The court subsequently determined through questioning Darling that he got involved in "preparing some phony returns," was "taking a piece of the refunds," and "knew those returns were phony when they were being submitted." At no time did the court ask Darling whether he understood he was charged with reaching agreements with other persons to prepare and file fraudulent tax returns. Unlike *Cusenza,* but like *Wetterlin,* the government failed to establish on the record at the hearing a factual basis for the conspiracy charge. Thus, the court could not rely on Darling's assent to the facts presented as evidence that he understood the conspiracy charge.

■ Nor did the conduct to which Darling admitted constitute the offense with which he was charged. Essentially, he admitted to the substantive crime of defrauding the United States. As this discussion makes clear, there was an insufficient factual basis for his plea of guilty to the conspiracy charge. The district court therefore also failed to comply with Rule 11(f).

We recognize that the experienced district judge may well have had knowledge of facts that persuaded him that the defendant understood the nature of the conspiracy charge and that there was a factual basis for the plea. But these considerations must be made a part of the record of the plea proceeding. *Wetterlin,* 583 F.2d at 352–53. In this case, we find no allusion to other sources which may have provided a factual basis for the plea to the conspiracy charge. As this court has made clear, "[w]hatever the court is relying on to establish the factual basis must be *specifically articulated on the record* in order to comply with the purpose of the rule which is to provide a complete record to facilitate

review in any subsequent post-conviction proceeding." *Id.* at 353 n. 10 (citing *McCarthy v. United States,* 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969)).

■ Turning to the remaining counts, we believe that the court's failure to explain the nature of the two mail fraud charges was harmless error. The prosecutor's statement made clear that Darling participated in a scheme to defraud insurance companies by filing false claims; supplied false wage loss information through two companies, Empire Realty and Accountax, on two individuals' insurance claims; and used the mails in furtherance of this scheme. Darling's subsequent statements evidence his understanding of these charges.

Darling also admitted these allegations with the exception of the allegation that he established Empire Realty as a source of false wage loss information. The establishment of Empire Realty was not essential to the factual basis for the plea. Darling acknowledged preparing and submitting to the insurance company wage loss statements he knew to be false for the purpose of collecting funds to which he was not entitled. This was sufficient.

In conclusion, we find that the plea of guilty to the conspiracy count must be vacated because the court's violation of Rule 11 cannot be deemed harmless. Darling will be permitted to replead to this count. The court's failure to explain the nature of the mail fraud charges, however, was harmless error.

### III.

Darling also contends that the district court was required to conduct an inquiry similar to that mandated by Rule 11(d) into whether his decision to withdraw his motion to withdraw the guilty pleas was voluntary. He asks this court to remand this case to the district court for a hearing on this issue.

---

"Charles White," defendant also prepared and filed five false 1980 tax returns seeking tax

refunds for himself. These returns generated refund checks totalling more than $24,000.

In support of his oral motion to withdraw the pleas, Darling contended that he did not feel he was properly advised of the charges against him and that he was not guilty. Darling's attorney advised the court that he would have to withdraw as counsel to Darling if the court entertained the motion because the government intended to call him as a witness at any hearing on the motion. Counsel also informed the court that he disagreed with the merits of the motion and stated that he was uncertain whether Darling really wanted to withdraw the guilty pleas.

The court declined to appoint new counsel and ordered Darling's attorney to prepare a written motion to withdraw setting forth Darling's position. At a hearing on February 1, 1984, counsel informed the court that Darling no longer wanted to withdraw his pleas.

MR. WALSH: [I] had a long discussion with Mr. Darling last Wednesday. I had prepared a motion. I talked to him on Friday. I had prepared a motion. When I went over with it on Wednesday, Mr. Darling advised me, your Honor, that he wished to withdraw that motion. He had been doing some very heavy drinking since his guilty plea in this case. Basically, that was the result of that; and once he had been locked up for a few days and had time to think about it, he advised me that he did not wish me to file any type of written motion and wanted me to withdraw the oral motion that was made the last time we were in court.

THE COURT: Is that accurate, Mr. Darling?

THE DEFENDANT DARLING: Yes, sir.

Claiming that the decision to withdraw a motion to withdraw a guilty plea is as serious and consequential a decision as the original decision to plead guilty, Darling contends that the court was duty bound to determine that the decision was voluntary, and not the product of threats or coercion.

■ Clearly, a plea of guilty must be "voluntary" in the normal sense of the word; it may neither be motivated by promises other than those contained in the plea agreement nor brought about by threats or coercion. Rule 11(d) therefore places an affirmative duty on the court to inquire whether the defendant's decision is voluntary in this sense.[4]

■ A decision to withdraw a motion to withdraw a guilty plea is in effect a reaffirmation of the original plea. Because the defendant's declaration in open court that his plea is not the product of threats or coercion carries a strong presumption of veracity, we believe that a subsequent reaffirmation of that plea must be presumed voluntary in the absence of circumstances suggesting otherwise.

■ In this case, the trial judge did inquire whether counsel's representation that Darling wanted to withdraw the motion was accurate. Darling responded affirmatively. Contrary to Darling's contention on appeal, we do not believe that the circumstances surrounding the decision to withdraw the motion suggested that that decision was the product of threats or coercion. True, Darling's attorney was reluctant to pursue the motion to withdraw. But he represented that he indeed prepared the motion and extensively discussed it with Darling. There is no indication that Darling was coerced into withdrawing the motion and, notably, he does not so contend on appeal. Under these circumstances, we do not deem it necessary to remand for a hearing on the voluntariness of the decision to withdraw the motion.

In conclusion, we affirm Darling's convictions on the mail fraud counts, but vacate Darling's conviction on the conspiracy charge and remand for repleading to this count.

---

4. In *McCarthy v. United States,* 394 U.S. 459, 471, 89 S.Ct. 1166, 1173, 22 L.Ed.2d 418 (1969), the Supreme Court expanded the notion of "voluntariness" to include the concept that a defendant must have an understanding of the essential elements of the crime charged in order for the plea to be valid under Rule 11. This, of course, is not the type of voluntariness inquiry Darling seeks to impose in this case.