915 F.2d 1573
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Floyd W. HAWKINS and Bennie M. Brown, Defendants-Appellants.
 No. 89-6262, 89-6435.
 United States Court of Appeals, Sixth Circuit.
 Oct. 9, 1990.
 
 Before KEITH, KRUPANSKY and SUHRHEINRICH, Circuit Judges.
 PER CURIAM:
 
 
 1
 Floyd Hawkins ("Hawkins") appeals from the district court's September 12, 1989 judgment and sentencing order entered pursuant to a guilty plea. Bennie Michael Brown ("Brown") appeals from the district court's October 23, 1989 judgment and sentencing order entered pursuant to a guilty plea. For the reasons set forth below, we AFFIRM, in part and REMAND, in part.
 
 I.
 A.
 
 2
 In December 1987, Hawkins' former wife, Donna Payne ("Payne"), telephoned him in San Diego regarding outstanding child support obligations. During the course of the conversation, Hawkins suggested that he travel to Bowling Green, Kentucky to instruct Payne in the technique of manufacturing methamphetamine. Hawkins and Payne agreed that manufacturing methamphetamine would provide Payne with a means of generating income to relieve Hawkins of his child support obligations.
 
 
 3
 Hawkins and Payne offered their mutual friend, Brown, the opportunity to participate in the manufacturing process. Brown provided a house he owned at 608 Park Street in Bowling Green as the site for the methamphetamine laboratory. In California, Hawkins purchased three pounds of ephedrine, an essential chemical in the methamphetamine manufacturing process; he then transported the ephedrine to Bowling Green on April 15, 1988. Brown and Hawkins travelled from Bowling Green to Louisville, Kentucky to purchase glassware for the methamphetamine laboratory.
 
 
 4
 Brown solicited assistance from Marie Thornbury ("Thornbury"), Sheila Cordell ("Cordell"), Carole Paul ("Paul") and Charles Wilcox ("Wilcox") in furtherance of the scheme. After setting up the laboratory on April 27, 1988, Hawkins completed a portion of the manufacturing process on April 30, 1988 which yielded roughly four to five ounces of methamphetamine. Brown witnessed this process. Hawkins gave the product to the other members of the organization. The remaining chemicals were left unfinished, in what is referred to as an "oil state." On May 2, 1988, Brown purchased several canisters of freon for the manufacturing process. On May 6, 1988, approximately three ounces of methamphetamine were divided and distributed to Hawkins, Brown, Thornbury and Cordell. Brown consumed some of his share of the methamphetamine and sold the remainder to Paul for $400. Hawkins gave Brown a large quantity of money, a portion of which he used as a rent payment for the Park Street premises. Hawkins then returned to California. In exchange for assiting in the organization of this operation, Hawkins was relieved of his child support obligations. Later, Brown gave Payne $800 from the money he received from Hawkins, in exchange for approximately one half ounce of methamphetamine.
 
 B.
 
 5
 On September 6, 1988, a federal grand jury charged Hawkins and Brown with: conspiring to manufacture, possess with intent to distribute and distribute measurable quantities of methamphetamine, in violation of 21 U.S.C. Secs. 812, 841(a)(1), 846; manufacturing approximately nine ounces of methamphetamine, in violation of 21 U.S.C. 841(a)(1) and 18 U.S.C. Sec. 2; and possession with intent to distribute approximately nine ounces of methamphetamine, in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2.[1] Hawkins and Brown entered into plea agreements concerning the conspiracy charge. Brown and the government agreed: to dismiss counts two and three against Brown; to leave unresolved the quantity of methamphetamine involved in the conspiracy for purposes of computing the base offense level; and to recommend sentences at the low end of the appropriate guideline range. Hawkins and the government agreed: to dismiss counts two and three of the indictment after sentencing; to make known to the court the extent of Hawkins' cooperation; to recommend a level two reduction for acceptance of responsibility; and to recommend the minimum term prescribed by the applicable guideline.
 
 
 6
 Hawkins' Presentence Report calculated an offense level of 28 based on the quantity of 2.25 pounds of methamphetamine. The report recommended an increase of four offense levels because Hawkins was a leader or organizer of a conspiracy involving five or more participants. U.S.S.G. Sec. 3B1.1(a). The report also recommended a reduction of two offense levels because Hawkins accepted responsibility for the offense. See U.S.S.G. Sec. 3E1.1.
 
 
 7
 At his sentencing hearing, Hawkins objected to the quantity used to calculate an offense level of 28. Hawkins cited as support for the erroneous calculation, a December 9, 1988 letter from the government proposing a stipulation of 294 grams (approximately eight ounces) and a recommended sentence of 78 months. The government maintained that the proposal had been rejected. Hawkins counters that he accepted the proposal. The record is devoid of evidence relating to either an acceptance or rejection of the proposal. Hawkins maintains that his plea agreement was based upon the 294 grams, although the plea agreement does not resolve the quantity issue.
 
 
 8
 Hawkins also attempted to stipulate that his role as organizer or leader involved a group of less than five individuals, thus warranting a two level increase. See U.S.S.G. Sec. 3B1.1(c). Hawkins proposed this stipulation based on his contention that he personally instructed only two people in the methamphetamine process. The other conspirators were brought into the enterprise only after he returned to California. The district court rejected the stipulation.
 
 
 9
 Brown's Presentence Report calculated an offense level of 28 based on the quantity of 2.25 pounds of methamphetamine. The report recommended a four level enhancement based on the determination that Brown was a leader or organizer in the criminal activity which involved five or more participants. See U.S.S.G. Sec. 3B1.1(a). At the October 19, 1989 sentencing hearing, Brown objected to the Presentence Report's methamphetamine quanitity determination and the addition of four points for his role as a leader and organizer of the conspiracy.
 
 
 10
 Brown presented the testimony of Thomas Green, Ph.D., Associate Professor of Chemistry at Western Kentucky University, who opined that assuming three pounds of emphedrine were used, no more than 227 grams of methamphetamine could have been produced by the process employed. The district court, relying on the Presentence Report and a statement by Donna Payne, determined that the appropriate quantity for calculating Brown's sentence was 2.25 pounds of methamphetamine.
 
 
 11
 Brown also contended that one of two polygraph test results[2] supported a finding that he was not a leader or organizer of the conspiracy. The government recommended only a two point increase based on the view that less than five persons were involved in the manufacturing process, although seven persons were involved in the distribution aspect of the conspiracy. See U.S.S.G. Sec. 3B1.1(c). The district court overruled Brown's objection and found that he was indeed a organizer or leader of the conspiracy which included more than five conspirators.
 
 
 12
 Hawkins' guideline range for an offense level of 30 and criminal history category III provided for an imprisonment range of 121-151 months. See United States Sentencing Commission, Guidelines Manual, ch. 5, pt. A (sentencing table). The district court sentenced Hawkins to 121 months imprisonment with a subsequent three year term of supervised release. Brown's guideline range for an offense level of 32 and criminal history category II placed him in an imprisonment range of 135-168 months. Id. The district court imposed a sentence of 135 months imprisonment with a subsequent six year term of supervised release. Hawkins and Brown filed timely notices of appeal.
 
 II.
 A.
 
 13
 Hawkins alleges that the district court failed to comply with several of the requirements of Federal Rule of Criminal Procedure 11. Specifically, Hawkins claims that the district court failed to: (1) advise him of the nature of the charge to which he was pleading, in violation of Rule 11(c)(1); (2) establish a factual basis for the guilty plea, in violation of Rule 11(f); (3) advise Hawkins that if the district court does not accept the sentencing recommendation, he would not be permitted to withdraw the plea, in violation of Rule 11(e)(2); and (4) inquire as to whether any threats or promises, other than the plea agreement, had been made to him, in violation of Rule 11(d). We will address each of these alleged Rule 11 violations.
 
 
 14
 Rule 11(c)(1) requires the district court, before accepting a guilty plea, to "inform the defendant of, and determine that the defendant understands, ... the nature of the charge to which the plea is offered." In determining whether Hawkins was advised of the nature of the charge, we must examine the record of the colloquy between Hawkins and the district court. See United States v. Van Buren, 804 F.2d 888, 891 (6th Cir.1986). Where the crime is easily understood, a reading of the indictment or a summary of the charges in the indictment, along with the defendant's admission has been held sufficient to inform the defendant of the nature of the charge and to establish a factual basis under Rule 11. See Van Buren, 804 F.2d at 892 (citations omitted); accord United States v. Cusenza, 749 F.2d 473, 476 (7th Cir.1984) (holding that there is less need to explain a "simple" conspiracy, for example, a "fairly simple agreement to purchase and distribute marijuana," than to explain a "complex" conspiracy).
 
 
 15
 Based upon a rigid interpretation of Van Buren, Hawkins argues that the district court's reliance upon the text of the indictment to inform him of the nature of the crime fails to satisfy the mandate of Rule 11(c)(1). We, however, find the facts in the instant case distinguishable from those in Van Buren. The defendant in Van Buren pled guilty to the charge of knowingly, intentionally, and unlawfully using a communication facility to commit or facilitate a conspiracy to possess with intent to distribute and to distribute cocaine. At the sentencing hearing, neither the prosecutor nor the court discussed the nature of the conspiracy. The district judge proceeded "as if the indictment charged the defendant with unlawful use of a telephone to purchase cocaine." Van Buren, 804 F.2d at 892. The district court failed to establish that the defendant knew of the conspiracy and acted in its furtherance. Id. The Van Buren court held that because of the complexity of the charge, a reading of the indictment and defendant's admission of guilt did not constitute sufficient compliance with Rule 11. Although in both the present case and Van Buren, the district court relied on the text of the indictment to establish the nature of the offense, the simplicity of the conspiracy offense distinguishes the facts before us from those in Van Buren. The specificity with which the district court referred to the conspiracy further distinguishes this case from Van Buren.
 
 
 16
 In their colloquy, the district court advised Hawkins of the nature of the cause when it specified: the length of time during which the conspiracy existed; the number of parties to the unlawful agreement; the requisite intent; the overt acts undertaken in the furtherance of the conspiracy; and the specific statutes that Hawkins was charged with violating.[3] The district court then advised Hawkins of the maximum sentence and fine that accompanied the offense. Hawkins again indicated that he understood the offense with which he was charged and the accompanying penalty. By using the synonymous terms "confederated" and "agreed," the district court insured that Hawkins understood what a "conspiracy" is. Through its questioning, the district court determined that Hawkins knew of the conspiracy and furthered it by distributing measurable quantities of methamphetamine. See Joint Appendix at 59 (Hawkins' Change of Plea Transcript). We, therefore, conclude that the district court complied with Rule 11(c)(1).
 
 
 17
 Rule 11(f) requires the district court, before entering judgment on a guilty plea, to make an "inquiry as shall satisfy it that there is a factual basis for the plea." The district court may determine the existence of the Rule 11(f) factual basis from a variety of sources, including a statement on the record from the defendant or the government prosecutors. United States v. Goldberg, 862 F.2d 101, 105 (6th Cir.1988); accord United States v. Lumpkins, 845 F.2d 1444, 1450 (7th Cir.1988) (court may find the factual basis in anything that appears on the record, colloquy between judge and defendant not required). The district court's inquiry at Hawkins' sentencing hearing and Hawkins' subsequent acknowledgment, on the record, of: (1) his involvement in a conspiracy to manufacture, possess with the intent to distribute and distribute methamphetamine; (2) the duration of the conspiracy; and (3) the parties involved constitute an adequate factual basis under Rule 11(f). See United States v. Allen, 804 F.2d 244, 245 (3d Cir.1986) (defendant's own admission sufficient basis for district court's finding that a factual basis exists for the plea).
 
 
 18
 Hawkins is correct in assigning error to the district court's failure to comply with Rule 11(e)(2) which requires the district court to inform the defendant that should it reject the plea agreement, the plea may not be withdrawn.[4] We find, however, that the district court's noncompliance with Rule 11(e)(2) did not affect Hawkins' substantial rights because the court, in fact, accepted the plea agreement and sentenced him to the lowest possible term within the guideline range.[5] We, therefore, find the district court's noncompliance constitutes harmless error. See Fed.R.Crim.P. 11(h) ("Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded.")
 
 
 19
 We next find Hawkins' contention that the district court accepted his guilty plea in violation of Rule 11(d) meritless. Rule 11(d) requires the district court to determine that "the plea is voluntary and not the result of force or threats or of promises apart form a plea agreement." Rule 11(d) further requires the Court to inquire as to whether the defendant's willingness to plead guilty results from prior discussions between the government's attorney and the defendant. The district court complied with Rule 11(d) when it engaged in the following colloquy:
 
 
 20
 THE COURT: Anyone promise you anything to cause you to change your plea?
 
 
 21
 HAWKINS: No, sir.
 
 
 22
 THE COURT: Anybody [make] any threat against you or anyone close to you to cause you to change your plea?
 
 
 23
 HAWKINS: No, sir.
 
 
 24
 THE COURT: You understand that nobody could make a promise to you that would be binding on the Court?
 
 
 25
 HAWKINS: Yes, sir.
 
 
 26
 Joint Appendix at 56 (Hawkins' Change of Plea Transcript).
 
 
 27
 Hawkins' responses to the district court's questions insured that his plea was voluntary. Moreover, the Court's inquiry as to the existence of a plea agreement revealed that Hawkins' willingness to plead guilty was a result of prior discussions between the attorney for the government and Hawkins or his attorney. Id. at 57. The exact nature of the plea agreement was then disclosed to the district court. After careful review of the record, we therefore, find that the district court afforded Hawkins the procedural safeguards to insure that: he understood the nature of his constitutional rights; his plea was voluntary with the full understanding of the nature of the crime charged and the consequences of his guilty plea; and there is a factual basis for the crime to which the plea is being offered. See Goldberg, 862 F.2d at 106 (explaining objectives of Rule 11).
 
 B.
 
 28
 We next turn to Hawkins' allegation that the United States breached an agreement with him concerning the amount of methamphetamine to be used in calculating the appropriate guideline range. Hawkins contends that in a December 9, 1988 correspondence, the government offered to stipulate that Hawkins' crime involved 294 grams of methamphetamine. See Joint Appendix at 17 (December 9, 1988 correspondence of Assistant U.S. Attorney David P. Grise). The government counters that Hawkins rejected the plea offer, choosing to argue at the sentencing hearing that a smaller quantity of methamphetamine was attributable to Hawkins.[6] The district court found that the plea agreement embodied the entire agreement between the United States and Hawkins. Appellate review of the plea agreement is limited to determining what the parties to the plea bargain reasonably understood to be the terms of the agreement. See United States v. Barrett, 890 F.2d 855, 863 (6th Cir.1989). The terms of the parties' agreement is a question of fact; therefore, we will not disturb the district court's findings in the absence of clear error. Id.
 
 
 29
 Hawkins fails to provide any evidence that the offer to stipulate the quantity of methamphetamine was accepted. Paragraph 16 of the written plea agreement that Hawkins signed indicates that it embodies the entire agreement between the United States and Hawkins. See Joint Appendix at 9 (Hawkins' plea agreement stating "no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this agreement to induce [Hawkins] to plead guilty"). At the sentencing hearing, Hawkins reiterated his understanding that there were no other conditions or promises other than those provided in the plea agreement. Joint Appendix at 91 (Hawkins' Sentencing Hearing Transcript). The government's offer to stipulate the amount of methamphetamine was made six months prior to Hawkins' guilty plea. After Hawkins advanced his theory of reducing the amount involved by the purity value, the government agreed to allow Hawkins to make such an argument by entering into a plea agreement absent a stipulation to the quantity involved. Hawkins reserved the right to object to the quantity calculated in the presentence report. While the record indicates that the government offered to stipulate the quantity of methamphetamine involved, the record does not support a finding that Hawkins and the government entered into such an agreement.
 
 
 30
 Plea agreements are to be construed strictly. United States v. Brummett, 786 F.2d 720, 723 (6th Cir.1986). Hawkins' bald assertion that he and the government agreed to stipulate the quantity of methamphetamine is contadicted by the express terms of the plea agreement. Absent terms specifically referring to a stipulated quantity of methamphetamine, we find Hawkins' claim meritless. See Baker v. United States, 781 F.2d 85, 90 (6th Cir.1986) (holding where Rule 11 procedures were fully adequate, absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms, at least when specifically asked to do so by the court, a defendant's plea agreement consists of the terms revealed in open court).
 
 C.
 
 31
 In computing Brown's sentencing range under the Sentencing Guidelines for count one, the district court found that Brown's crime involved 2.25 pounds of methamphetamine. On appeal, Brown alleges that the district court erred in concluding that three pounds of ephedrine could yield 2.25 pounds of methamphetamine, as such determination is based on evidence which lacks sufficient indicia of reliability.
 
 
 32
 Conflicting evidence was produced at the sentencing hearing regarding the quantity of methamphetamine involved. The government and the parole officer argued that 2.25 pounds of of methamphetamine were involved because: Hawkins supplied the operation with three pounds of ephedrine, a precursor chemical for methamphetamine; and Donna Payne stated she had been told that if the three pounds of ephedrine were completed properly, it would yield 2.25 pounds. In contrast, Dr. Thomas Green, a chemist, testified that no more than 227 grams of methamphetamine could have been produced by this operation because of the rudimentary filtering and drying procedures used.
 
 
 33
 Section 6A1.3 of the Sentencing Guidelines states, in pertinent part:
 
 
 34
 In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.
 
 
 35
 The preponderance of evidence standard applies to contested facts in sentencing proceedings. United States v. Silverman, 889 F.2d 1531, 1535 (6th Cir.1989). Where enhancement factors are contested, the government bears the burden of proof. Id. In this case, Donna Payne's statement fails to meet the requisite level of reliability to support probable accuracy. Her statement was based upon information provided by an unidentified source. Without good cause shown for the nondisclosure of the source's identity and sufficient corroboration by other means, the district court's consideration of the out of court declarations of Payne's unidentified source was improper. See United States Sentencing Commission, Guidelines Manual 6.3 (commentary citing United States v. Fatico, 579 F.2d 707, 713 (2d Cir.1978)). We, therefore, remand this case to the district court for further proceedings to establish the quantity of methamphetamine involved.
 
 D.
 
 36
 Both Hawkins and Brown claim that the district court erred in raising their respective offense levels from 28 to 32 because they were leaders or organizers of a conspiracy that involved five or more people. We will not disturb the district court's findings of fact relevant to sentencing, unless they are clearly erroneous. See United States v. Perez, 871 F.2d 45, 47-48 (6th Cir.1989); United States v. Silverman, 889 F.2d 1531, 1540 (6th Cir.1989); see also 18 U.S.C. Sec. 3742(e).
 
 
 37
 In raising Hawkins' offense level, the district court concluded that Hawkins was one of the primary executors of the conspiracy. The commentary accompanying U.S.S.G. Sec. 3B1.1 advises that the district court should consider the following factors in determining whether a four-level enhancement is warranted: the exercise of decision making authority; the nature of participation in the commission of the offense; the recruitment of accomplices; the claimed right to a larger share of the fruits of the crime; the degree of participation in planning or organizing the offense; the nature and scope of the illegal activity; and the degree of control and authority exercised over others. United States Sentencing Commission, Guidelines Manual 3.3 (Sec. 3B1.1 Commentary). More than one person may qualify as a leader or organizer of a conspiracy. Id.
 
 
 38
 After careful review, we find the district court's findings of fact supported by the record. The district court's four-level adjustment of Hawkins' and Brown's offense level was proper. Hawkins, knowledgeable of the methamphetamine manufacturing process, suggested that he travel across the country to teach his former wife, Donna Payne, the technique in exchange for relief from his child support obligation. Essentially, Hawkins was the master-mind of the operation. Hawkins purchased three pounds of ephedrine, transported it from California to Kentucky, and facilitated the conspiracy by sharing his expertise with other participants. Five persons other than Hawkins were involved in either the manufacturing or distribution aspects of the scheme. After returning to California, he continued to benefit from the conspiracy through the forgiveness of his child support obligation. Therefore, his withdrawal argument is unpersuasive.[7] The nature of Hawkins' participation in the conspiracy, and the authority he exercised in organizing the offense, provide substantial support for the district court's finding that Hawkins was a leader or organizer of the conspiracy.
 
 
 39
 There is also considerable evidence supporting the district court's finding that Brown was a leader or organizer of the conspiracy. The district court rejected the results of Brown's polygraph examinations because they offered conflicting evidence. Brown recruited accomplices for the scheme[8] and served as the common link between all of the co-conspirators. Additionally, the methamphetamine laboratory was located in a house that Brown provided. We find that the district court's findings of fact are not clearly erroneous. We, therefore, affirm the district court's adjustment of Hawkins' and Browns' respective offense levels for their roles as leaders or organizers of the conspiracy.
 
 III.
 
 40
 After careful review of the record, we find that the district court complied with the requirements of Fed.R.Crim.P. 11. We also conclude that the district court properly enhanced Hawkins' and Brown's respective offense levels because of their leadership role in the conspiracy. We, therefore, affirm the district court's determinations regarding these issues. Although the district court properly determined that the United States did not breach its plea agreement with Hawkins, we conclude, nevertheless, that the district court has not established a sufficient basis for concluding the quantity of methamphetamine involved in the conspiracy. We, therefore, remand this case to the district court with directions to determine the quantity of methamphetamine based on sufficiently reliable evidence.
 
 
 
 [1]
 Donna Payne, Marie Thornbury, Carol Paul, Sheila Cordell and Charles Wilcox were also indicted. They, however, are not parties to this appeal
 
 
 [2]
 Brown underwent two polygraph examinations. The first exam administered by a special agent of the FBI, which Brown failed, consisted of questions relating to the truthfulness of information he provided to the police. Brown passed the second polygraph examination, administered by Pat Thomas of the Bowling Green Police Department. The results support a finding that Brown was not a leader or organizer of the conspiracy
 
 
 [3]
 The district court asked Hawkins:
 [I]s it true that on or about April 1988 to on or about August 8, 1988 ... you, Donna Ray Payne, Bennie Michael Brown, Marie Thornbury, Carole Ann Paul, Sheila Joy Cordell and Charles Wilcox, the defendants, unlawfully and knowingly conspired and confederated and agreed together with each other and with other persons, ... [to] commit[ ] an offense against the United States, that is to manufacture, possess with intent to distribute and to distribute measurable quantities of methamphetamine, a schedule 2 controlled substance as defined in Title 21, United States Code, Section 812, [in] violation of Title 21, United States Code, Section 841(a)(1)?
 Joint Appendix at 59 (quoting Hawkins' Change of Plea Transcript). Hawkins responded, "Yes, sir." Id. He then stipulated that he did not know all of the persons that the district court named. However, he acknowledged conspiring with at least some of the people indicated. Id.
 
 
 [4]
 The district court merely informed Hawkins that "nobody could make a promise to you that would be binding on the Court." Joint Appendix at 56 (Hawkins' Change of Plea Transcript). The district court, however, did not advise Hawkins, pursuant to Rule 11(e)(2), that if it did not accept the recommendation of a particular sentence, he had no right to withdraw the plea
 
 
 [5]
 At Hawkins' Change of Plea Hearing, the government's attorney advised the court that:
 The plea agreement is pursuant to Federal Rule 11(e)(1)(b). Under the plea agreement Mr. Hawkins will plead to count 1, the United States will dismiss counts 2 and 3 at sentencing. At the time of the sentencing, [the] United States will recommend that the defendant be sentenced to imprisonment for a term equal to the minimum number of months prescribed by the applicable sentencing guideline range as determined by the Court with the assistance of the probation office. We will make known to the Court the extent of the defendant's cooperation and recommend that the defendant receive a two level reduction of his guideline range for acceptance of responsibility. The agreement also provides for the defendant's cooperation with the United States' case,....
 Joint Appendix at 57 (Hawkins' Change of Plea Transcript).
 
 
 [6]
 The government contends that the methamphetamine found at 608 Park Street was of low purity. Hawkins, therefore, intended to multiply the total grams of methamphetamine seized by the purity, thereby reducing the amount to a small quantity of pure methamphetamine. Joint Appendix at 31 (Government's Response to Defendant's Memorandum Regarding Sentencing, United States v. Hawkins, 88-00015-B(M), July 28, 1990)
 
 
 [7]
 Hawkins contends that he withdrew from the conspiracy before it reached five or more people. Hawkins' Brief at 15
 
 
 [8]
 Brown recruited Charles Wilcox, Marie Thornbury, Sheila Cordell and Carole Paul in the methamphetamine production and distribution scheme