UNITED STATES of America,
Plaintiff–Appellee,

v.

Edmund Tanios ELIAS,
Defendant–Appellant.

No. 90–2230.

United States Court of Appeals,
Tenth Circuit.

July 2, 1991.

Ron Koch, Albuquerque, N.M., on the briefs, for defendant-appellant.

William L. Lutz, U.S. Atty., and Thomas L. English, Asst. U.S. Atty., Albuquerque, N.M., on the brief, for plaintiff-appellee.

Before ANDERSON, TACHA and BRORBY, Circuit Judges.

TACHA, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

## I. Background

Defendant-appellant Edmund Elias appeals a district court denial of his motions to withdraw a guilty plea and the imposition of sentence. On appeal, Elias argues the district court erred because his plea was not made voluntarily, knowingly, and intelligently. He also argues the court erroneously applied the incorrect version of the Sentencing Guidelines or, in applying the correct version, erroneously increased the offense level by taking into account the conduct of his codefendants. We exercise jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742 and affirm.

Elias was indicted on one count of conspiracy and two counts of firearms violations. He entered a plea of guilty to one count of knowingly making fictitious statements intended to deceive a licensed dealer in connection with the acquisition of firearms in violation of 18 U.S.C. §§ 2, 922(a)(6), and 924(a)(1)(B).

At the plea hearing, the court placed Elias under oath and asked if he had "received a copy of the indictment, the charges pending against you." Elias responded affirmatively. Elias also responded affirmatively to the court's question whether he had an opportunity to review the charges with his attorney. When the court asked about representation Elias had received from his attorney, Elias indicated he was fully satisfied and had no complaints.

The court informed Elias the maximum penalty for the offense to which he was pleading guilty is not more than five years' imprisonment, a fine of not more than $250,000, and a special penalty assessment of $50. The court also told Elias that although his sentence would not be determined until after a presentence report was completed, Elias would be sentenced under the Sentencing Reform Act of 1984 and the Sentencing Guidelines. The court asked Elias if his attorney had discussed the Sentencing Guidelines with him. Elias indicated he had understood the judge could impose a sentence more or less severe than that called for in the Guidelines.

The court advised Elias he had rights to plead not guilty to the charged offenses, to a trial by jury, to assistance of counsel, to see and hear all the evidence against him and cross-examine witnesses, to decline testifying unless he chose to do so in his own defense, and to use subpoenas or compulsory process to compel witnesses to testify for him. The court also stated that by entering a plea of guilty Elias would not have a trial and would forfeit all the rights explained to him.

The court informed Elias the charge against him was providing a fictitious statement in the acquisition of a firearm. The court questioned the prosecutor about the factual basis of the plea. The prosecutor stated the government would show:

[O]n April 23, 1988 this defendant presented a false driver's license in the name of one Mr. Clements to a licensed firearm dealer, Mr. Howard. In return for those representations, oral representations, Mr. Howard produced, amongst others, two .380 caliber pistols.

The defendant then filled out an ATF [Alcohol, Tobacco & Firearms] form entitled 4473 with that false information. He then swore to that form and signed it. Because of those written and oral representations, the defendant was permitted to purchase the two .380 caliber pistols....

The prosecutor also told the court the government could prove Elias had written the name "Clements" on the form based on a handwriting expert's comparison of handwriting exemplars.

The court asked Elias how he pleaded to Count V of the indictment. Elias responded, "Guilty." When the court asked him to explain in his own words what he was pleading guilty to, Elias told the court he

had filled out false information on the form even though he did not understand the law or intend to violate it. When the court asked Elias whether he used the other name, he answered, "Yeah. It's my friend's name." The court found Elias was fully competent and capable of entering an informed plea, his guilty plea was knowing and voluntary, and the plea was supported by an independent factual basis relating to each element of the offense.

After the plea hearing, the presentence report was prepared. The report concludes the Sentencing Guidelines base offense level is nine with an increase of two points for the defendant's supervisory role in the offense, an increase of two points for obstruction of justice, and a decrease of two points for acceptance of responsibility. The report also states Elias falls into criminal history category one. According to the Guidelines, an offense level of eleven and a criminal history category of one results in a sentencing range of eight to fourteen months and a mandatory period of supervisory release of two to three years.

Prior to sentencing, Elias filed a motion to withdraw his guilty plea and later a motion to reconsider his motion to withdraw, both of which were denied. Elias also made factual objections to the presentence report, and an evidentiary hearing was conducted. The court rejected Elias' objections and sentenced him to fourteen months' imprisonment, a supervised release of three years, a $5,000 fine, and a special assessment of $50.

## II. Discussion

### A. Compliance with Rule 11

█ A guilty plea must be knowing and voluntary. *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969). Rule 11 of the Federal Rules of Criminal Procedure prescribes procedures designed to ensure a plea is made knowingly and voluntarily. *United States v. Gomez–Cuevas*, 917 F.2d 1521, 1524–25 (10th Cir.1990). We generally review de novo a district court's compliance with the requirements of Rule 11 before accepting a guilty plea. *Id.* at 1524;

*see United States v. Rhodes*, 913 F.2d 839, 843 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1079, 112 L.Ed.2d 1184 (1991). We review a court's decision regarding a factual basis for a guilty plea for an abuse of discretion. *See United States v. Keiswetter*, 860 F.2d 992, 996 (10th Cir. 1988); *United States v. Dayton*, 604 F.2d 931, 938 (5th Cir.1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980).

Rule 11 requires a district court to address a defendant in open court and determine he understands a number of facts before accepting a plea of guilty, including: (1) the nature of the charge; (2) the mandatory minimum and maximum possible penalty provided by law, including any supervised release term; and (3) the fact the court must consider any applicable sentencing guidelines but may depart from them under some circumstances. Fed.R.Crim.P. 11(c)(1). The court also must advise an unrepresented defendant of his right to court-appointed counsel. The court must explain that the defendant has the right not to plead guilty, to a jury trial, to confront and cross-examine witnesses, and to be free from compelled self-incrimination. Further, the court must inform the defendant he waives the right to a jury trial by pleading guilty. Fed.R.Crim.P. 11(c)(2)–(4).

To further protect a defendant who enters into a plea agreement, Rule 11(f) provides "the court should not enter a judgment ... without making such inquiry as shall satisfy it that there is a factual basis for the plea." The advisory committee's notes explain this duty is meant to protect a defendant who may understand a charge but does not realize his conduct fails to fall within that charge. *Id.* advisory committee's note (1966 amendment). The court may satisfy this requirement by questioning the defendant or the government or by examining the presentence report to determine whether the conduct to which the defendant admits constitutes an offense charged in the indictment. If the court is not satisfied a factual basis for that charge is present, the court should set aside the plea and enter a plea of not guilty. *Id.*

■ Elias argues the district court failed to advise him fully of the nature of the charge against him. A court may satisfy Rule 11 and constitutional standards by explaining in plain terms the nature of the charge. *Stinson v. Turner*, 473 F.2d 913, 916 (10th Cir.1973). The charge to which Elias pleaded guilty was violation of 18 U.S.C. § 922(a)(6), which makes it unlawful to "knowingly ... make any false ... statement or ... exhibit any false ... identification ... likely to deceive [a firearms] dealer." Although this provision requires that a defendant "knowingly" make a false statement to a dealer, it does not require a showing the defendant knowingly violated the law. *United States v. Beebe*, 467 F.2d 222, 226 (10th Cir.1972), *cert. denied*, 416 U.S. 904, 94 S.Ct. 1607, 40 L.Ed.2d 108 (1974); *see United States v. Cornett*, 484 F.2d 1365, 1367 (6th Cir.1973); *Cody v. United States*, 460 F.2d 34, 38 (8th Cir. 1971), *cert. denied*, 409 U.S. 1010, 93 S.Ct. 454, 34 L.Ed.2d 303 (1972).

■ Here, the court apprised Elias of the nature of the section 922 charge in discussing the plea agreement at the hearing. The court explained Elias was charged with providing a false statement in the acquisition of a firearm. Elias indicated to the court he understood this basis for his plea and had discussed the charge with his attorney. Because providing false information to a firearms dealer violates section 922(a)(6), the court's explanation of the nature of the charge is sufficient.

The court also discussed the factual basis for the plea with the prosecutor and Elias. The government explained that Elias had presented a false driver's license to a firearms dealer, filled out a form with false information from that license, and swore and signed the form in order to purchase the two firearms. Elias confirmed he had given false information by using his friend's name on the form. The record shows the district court did not abuse its discretion in determining the adequacy of the factual basis for the plea.

■ Elias argues the district court failed to inform him a section 922 violation requires proof of specific intent to deceive a firearms dealer. This argument is based on a misunderstanding of the law. In *United States v. Harrelson*, 705 F.2d 733, 736 (5th Cir.1983), the Fifth Circuit explained the phrase "likely to deceive" in section 922(a)(6) does not establish a specific intent element but only requires proof the defendant imparted false information with the general intention of deceiving or being likely to deceive the dealer. Further, when there is evidence of misstatements to a firearms dealer, the statutory requirement of "likely to deceive" may be satisfied even when the dealer already is alerted those statements may be false. *See, e.g., United States v. Ortiz–Loya*, 777 F.2d 973, 979–80 (5th Cir.1985). Elias' claim that no factual basis exists for a specific intent element is without merit because specific intent to deceive a dealer is not required. Elias' assertions the dealer may have known Elias was not "Clements" are therefore immaterial.

■ Elias contends the court failed to inform him fully of the effect of his plea—specifically, that sentencing would include a period of supervised release. Although the government concedes the court did not mention supervised release in the plea hearing, this technical violation of Rule 11 will be disregarded unless it affects substantial rights. In *United States v. Barry*, 895 F.2d 702, 705 (10th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 3222, 110 L.Ed.2d 669 (1990), we held a district court's failure to advise a defendant of a period of supervised release does not affect his substantial rights. This holding was based on the defendant's failure to show that knowledge of the period of supervised release would have materially affected his decision to plead guilty because the total sentence imposed—imprisonment and supervised release—was only a fraction of the total maximum penalty advised by the court. *Id.* at 705 & n. 2.

Here, Elias does not argue he would not have pleaded guilty had the court advised him of the mandatory period of supervised release. The court informed Elias the maximum penalty for his offense is five years' imprisonment, plus other fines and fees.

He received a sentence of fourteen months' imprisonment and supervised release of three years. The period of imprisonment and supervised release totals four years and two months, which does not exceed the maximum period of five years. Because the total period is a fraction of the maximum period of imprisonment stated by the court at the plea hearing, Elias' substantial rights are not affected. *See Barry*, 895 F.2d at 705.

Elias urges us to distinguish *Barry* based on the fact the defendant in that case received a total sentence amounting to only a quarter of the maximum imprisonment term. *Id.* at 703. In reaching our decision in *Barry*, however, we relied on other decisions where either the total sentence was a much higher fraction of the maximum period of imprisonment, *see United States v. Sisneros*, 599 F.2d 946, 948–49 (10th Cir.1979), or the court did not consider the size of the fraction significant as long as the total sentence was less than the maximum period of imprisonment, *see United States v. Hamilton*, 553 F.2d 63, 66 (10th Cir.), *cert. denied*, 434 U.S. 834, 98 S.Ct. 122, 54 L.Ed.2d 96 (1977). Therefore, we reject the distinction Elias attempts to draw from *Barry*. We also reject the suggestion that the possible effect of a violation of a condition of supervised release on the original term of imprisonment pursuant to 18 U.S.C. § 3583(e)(2) might affect the harmless error analysis under Rule 11(h). *See United States v. Clay*, 925 F.2d 299, 304 (9th Cir.1991); *United States v. Sanclemente–Bejarano*, 861 F.2d 206, 210 (9th Cir.1988). The court's omission here does not affect Elias' substantial rights because the total sentence does not exceed the statutory maximum stated by the court.

### B. Application of the Sentencing Guidelines

■ Elias also contends the district court erroneously applied the 1987 version of the Sentencing Guidelines in determining the base level offense for violation of section 922. We review de novo a district court's legal conclusions regarding the application of the Guidelines. *United States v. Tisdale*, 921 F.2d 1095, 1100 (10th Cir.1990).

The government concedes that between the 1987 version in effect at the time of the offense and the 1989 version in effect at the time of sentencing, the applicable version is the one least onerous to the defendant. Under the 1987 version, section 2K2.1(a) provides the base offense level for receipt of firearms by prohibited persons is nine. U.S.S.G. § 2K2.1(a) (1987). There is no provision in this section for an increase based on the number of firearms involved.

Under the 1989 version of the Guidelines, the base offense level under section 2K2.1(a) is only six. *Id.* § 2K2.1(a) (1989). However, this version also instructs the court to apply section 2K2.2 (Unlawful Trafficking and Other Prohibited Transactions Involving Firearms) if the offense involved the distribution of a firearms or possession with intent to distribute. *Id.* § 2K2.1(c)(1). Section 2K2.2 authorizes an increase of three or four in the offense level when the number of firearms to be distributed is 8 to 12 or 13 to 24 respectively.

■ This firearms enhancement in the 1989 version applies to Elias through the Guidelines' policy of considering the conduct of codefendants for purposes of sentencing. The 1989 version in section 1B1.3(a)(1) allows a sentencing court to consider "conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." *Id.* § 1B1.3(a)(1) comment. (n. 1). Based on this provision, a sentencing court may take into account the conduct of codefendants even though the offense to which the defendant pleaded guilty does not include conspiracy. *See, e.g., United States v. McFarlane*, 933 F.2d 898, 899 (10th Cir.1991); *United States v. Goddard*, 929 F.2d 546, 548 (10th Cir.1991); *United States v. Aquilera–Zapata*, 901 F.2d 1209, 1215 (5th Cir.1990).

■ Evidence presented at the sentencing hearing shows Elias and his codefendant, Frank Guzman, were involved in the distribution of 10 to 20 firearms. By taking into account this conduct, either three or four points must be added to the base

level offense of six under the 1989 version. Because the 1989 version was not applied, the district court did not enter a finding regarding the foreseeability to Elias of Guzman's conduct. However, we are convinced from the evidence about the number of firearms involved and the court's finding Elias was responsible for involving two other individuals in obtaining guns for Guzman that the court would have found that the codefendant's involvement in distribution of ten to twenty firearms was reasonably foreseeable to Elias. Because the base offense level under the 1989 version thus would be increased to either nine or ten, the district court did not err in determining a base offense level of nine from the 1987 version.

### C. Ineffective Assistance of Counsel

■■■ Elias further contends he had ineffective assistance of counsel during plea bargaining and sentencing because his attorney did not advise him of a specific intent requirement for the offense, incorrectly estimated his offense level, and did not procure plea agreement stipulations to reduce his sentence. We review de novo a determination whether an attorney's performance is so deficient that it violates a defendant's right to effective assistance. *Laycock v. New Mexico*, 880 F.2d 1184, 1187 (10th Cir.1989). A successful claim for ineffective assistance of counsel must establish: (1) the attorney's conduct is outside the wide range of competence demanded of attorneys and (2) the conduct was prejudicial to the defendant. *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985); *Strickland v. Washington*, 466 U.S. 668, 687–88, 692, 104 S.Ct. 2052, 2064–65, 2067, 80 L.Ed.2d 674 (1984); *Laycock*, 880 F.2d at 1187.

Because a section 922 offense does not require specific intent, Elias cannot complain his attorney's failure to advise him about it constitutes incompetence. Further, Elias has not shown his attorney's possible reliance on the 1989 version of the Guidelines prejudiced him in any way because both versions result in the same base offense level when applied to Elias. Furthermore, because the plea agreement with

the prosecutor is not binding on the district judge, Elias has not shown prejudice from his attorney's failure to procure stipulations in the agreement that sentencing would not take into account his codefendant's conduct.

### D. Withdrawal of the Plea

■■■ Finally, Elias contends the district court should have allowed him to withdraw his guilty plea. Rule 32 of the Federal Rules of Criminal Procedure allows a defendant to withdraw a guilty plea prior to sentencing "upon a showing by the defendant of any fair and just reason." Fed. R.Crim.P. 32. In *United States v. Hickok*, 907 F.2d 983 (10th Cir.1990), we listed seven considerations in determining whether a defendant's reason for withdrawal is fair and just: (1) whether the defendant has asserted his innocence; (2) prejudice to the government; (3) delay in filing defendant's motion and, if so, the reason for the delay; (4) inconvenience to the court; (5) defendant's assistance of counsel; (6) whether the plea is knowing and voluntary; and (7) waste of judicial resources. *Id.* at 985 n. 2 (citing *United States v. Carr*, 740 F.2d 339, 343–44 (5th Cir.1984), *cert. denied*, 471 U.S. 1004, 105 S.Ct. 1865, 85 L.Ed.2d 159 (1985)). A defendant's dissatisfaction with the length of his sentence generally is insufficient reason to withdraw a plea. *See, e.g., United States v. Savage*, 891 F.2d 145, 151 (7th Cir.1989). We review a district court's denial of a motion to withdraw a guilty plea only for an abuse of discretion. *Rhodes*, 913 F.2d at 839; *Hickok*, 907 F.2d at 984.

■■ Here, the guilty plea was knowing and voluntary. Elias had the benefit of effective assistance of counsel throughout the plea bargaining and sentencing. Further, he does not assert his innocence. Withdrawal would prejudice the government, inconvenience the court, and waste judicial resources. The only reason Elias asserts for withdrawal is dissatisfaction with the length of his sentence. The district court did not abuse its discretion in

denying Elias' motion to withdraw the guilty plea. We AFFIRM.