991 F.2d 806
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Charles Samuel LANGHAM, Defendant-Appellant.
 No. 91-5120.
 United States Court of Appeals, Tenth Circuit.
 March 31, 1993.
 
 Before McKAY, Chief Judge, ANDERSON, Circuit Judge, and MECHEM,* District Judge.
 ORDER AND JUDGMENT**
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 The court granted appellant's motion to submit this case on the briefs; therefore, this cause was submitted without oral argument. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9.
 
 INTRODUCTION
 
 2
 Defendant-appellant Charles Samuel Langham pled guilty to conspiracy to possess with intent to distribute and distribution of cocaine base (crack), a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii) and 846, and was sentenced to life in prison, followed by five years of supervised release. He challenges both the court's denial of his motion to withdraw his guilty plea and his sentence, contending that: (1) "The trial court erred in failing to fully comply with [Fed.R.Crim.P.] 11 and advise Mr. Langham of the nature of the charge and the consequences of a plea to conspiracy, and as such, [his] plea was not knowing and voluntary," Appellant's Opening Brief at 8; (2) "The trial court erred in denying Mr. Langham's motion to withdraw his plea prior to sentencing," id. at 11; and (3) "The trial court erred in sentencing Mr. Langham to a mandatory life sentence pursuant to 21 U.S.C. § 841(b)(1)(A)[;] alternatively, the trial court erred in failing to make specific findings prior to sentencing Mr. Langham," id. at 15, 16, in violation of 18 U.S.C. § 3553(c). We affirm.
 
 I. BACKGROUND
 
 3
 On September 6, 1990, Langham was charged in a multi-defendant indictment. The indictment was not complex. It recited that Langham was part of a conspiracy in which he had been supplied cocaine base (crack) by a codefendant, Carlton Keith Jackson, and that Langham and an unindicted coconspirator had travelled from Tulsa, Oklahoma, to Los Angeles, California, in order to obtain cocaine to be resold in Tulsa. The indictment further alleged that Langham had possessed a quantity of cocaine base with the intention to distribute it, and also had possessed $80,000 that he and other coconspirators intended to use to purchase cocaine. The indictment also alleged that as part of the same conspiracy Langham had travelled to Houston, Texas, in order to pick up cocaine for conversion into cocaine base to be sold in Tulsa. R.Vol. I, Tab 1.
 
 
 4
 Langham pled not guilty to the charges in the indictment and proceeded to trial with codefendant Carlton Keith Jackson on May 1, 1991. The next day, Langham decided to change his plea of not guilty to a plea of guilty. His guilty plea was not the subject of any plea bargain or agreement. After a hearing the district court accepted Langham's plea of guilty, and referred the matter to a probation officer for a presentence report. R.Supp.Vol. I, at 18.
 
 
 5
 On May 23, 1991, 21 days after Langham had changed his plea from not guilty to guilty, Langham filed a Motion to Withdraw Plea of Guilty and a brief in support thereof. R.Vol. I, Tab 59. The district court denied this motion in a written order. Id. at Tab 63. Shortly thereafter, a presentence report was submitted to the court. Langham objected to portions of the presentence report in a document filed on July 12, 1991. Id. at Tab 64. The court held a sentencing hearing on July 25, 1991, at which it overruled Langham's objections to the presentence report and then sentenced Langham to life imprisonment, plus five years supervised release, along with a $50 special assessment. R.Supp.Vol. II, at 14.
 
 II. RULE 11 VIOLATION
 
 6
 Langham contends that the district court erred in failing to comply with its "affirmative duty [under Fed.R.Crim.P. 11] to inform [him] of [the] conspiracy charge," Appellant's Opening Brief at 9, and that the court was required to make him "aware both that he [would] be held responsible for the acts of his coconspirators and that the entire quantity of drugs distributed by other members of the conspiracy may be used to calculate his sentence under U.S.S.G. § 1B1.3." Id. at 10. He further contends that he did not know that cocaine base, as opposed to cocaine powder, was the substance he was charged with conspiring to distribute.
 
 
 7
 Acceptance of a guilty plea by the district court without full compliance with Rule 11 requires that the guilty plea be vacated. McCarthy v. United States, 394 U.S. 459, 472 (1969); United States v. Keiswetter, 866 F.2d 1301, 1302 (10th Cir.1989) (en banc). We review a district court's compliance with Fed.R.Crim.P. 11 de novo. United States v. Gomez-Cuevas, 917 F.2d 1521, 1524 (10th Cir.1990); United States v. Rhodes, 913 F.2d 839, 843 (10th Cir.1990), cert. denied, 111 S.Ct. 1079 (1991). In order to be valid, a defendant's guilty plea must be knowing and voluntary, and be the product of a deliberate, intelligent choice. Parke v. Raley, 113 S.Ct. 517 (1992); McCarthy, 394 U.S. at 466; Rhodes, 913 F.2d at 843. Rule 11 imposes a duty on the trial court to address the defendant on the record and determine that he understands "the nature of the charge to which the plea is offered." Fed.R.Crim.P. 11(c)(1); United States v. Elias, 937 F.2d 1514, 1517-18 (10th Cir.1991). A defendant must have a full understanding of the consequences of the plea. United States v. Williams, 919 F.2d 1451, 1456 (10th Cir.1990) ("[T]o determine whether a plea is voluntary, a court must assess whether the defendant fully understood the consequences of the plea."), cert. denied, 111 S.Ct. 1604 (1991). Reading the indictment may be sufficient, but if the charge is complex, additional explanation may be required. United States v. Dayton, 604 F.2d 931, 936-38 (5th Cir.1979) (en banc), cert. denied, 445 U.S. 904 (1980), cited with approval in Gomez-Cuevas, 917 F.2d at 1525; see Elias, 937 F.2d at 1518 ("A court may satisfy Rule 11 ... by explaining in plain terms the nature of the charge.").
 
 
 8
 To determine a defendant's level of understanding, the court may consider the complexity of both the charge and the factual underpinnings of the indictment, and the characteristics of the defendant that could hinder or advance his comprehension of the guilty plea and its consequences. United States v. Allard, 926 F.2d 1237, 1245 (1st Cir.1991); Gomez-Cuevas, 917 F.2d at 1525; United States v. Darling, 766 F.2d 1095, 1098 (7th Cir.), cert. denied, 474 U.S. 1024 (1985). We look to the totality of the circumstances to determine whether the requirements of Rule 11 were satisfied under the unique circumstances of each case. United States v. Cusenza, 749 F.2d 473, 476 (7th Cir.1984); United States v. Coronado, 554 F.2d 166, 173 (5th Cir.), cert. denied, 434 U.S. 870 (1977); see Fed.R.Crim.P. 11(h), Advisory Committee Notes for 1983 Amendments (satisfaction of Rule 11 requirements need not be ritualistic).
 
 
 9
 Essentially, Langham contends that conspiracy is a difficult crime to understand, requiring detailed explanation. He asserts that he did not understand the conspiracy charge because the court did not explain conspiracy to him. He relies heavily on two cases, United States v. Darling, 766 F.2d 1095 (7th Cir.), cert. denied, 474 U.S. 1024 (1985), and United States v. Van Buren, 804 F.2d 888 (6th Cir.1988). In Darling, the court concluded that a defendant who had pled guilty to conspiracy to defraud the IRS did not adequately understand the conspiracy charge when the judge did not mention the word "conspiracy" and made no effort to explain the law of conspiracy either generally or with reference to defendant's case. Darling, 766 F.2d at 1098-99. The court further concluded that the judge erred in relying totally on defendant's representations that he had discussed the charges with his attorney and understood them, and held that "Rule 11(c)(1) is not satisfied by affirmative answers to the court's inquiries whether the defendant has discussed the charges with his attorney and whether the defendant has understood the charges." Id. Similarly, in Van Buren, the court noted that reading the indictment was insufficient to inform defendant of the "complex charge" of utilizing a communication facility to further a conspiracy or in the commission of a conspiracy. Van Buren, 804 F.2d at 892.
 
 
 10
 However, Mr. Langham ignores precedent more factually in point than Darling or Van Buren. The court in United States v. Edgecomb, 910 F.2d 1309 (6th Cir.1990), noted that a conspiracy charge under section 846, in contrast to the conspiracy charge in Van Buren, was simple enough for a "lay person" to understand, and that the court's recitation of the indictment, its inquiry as to whether the defendants understood the charge, and the government's reading of the facts constituting the conspiracy was sufficient to comply with Rule 11(c)(1). Edgecomb, 910 F.2d at 1313; see United States v. Abdullah, 947 F.2d 306 (8th Cir.1991) (when court read to defendant indictment charging defendant with conspiracy under section 846, that reading, combined with court's response to defendant's questions about the charge (in which the court explained the nature of a conspiratorial agreement), was sufficient to ensure that defendant was fully informed of the conspiracy charge against him), cert. denied, 112 S.Ct. 1969 (1992); United States v. Musa, 946 F.2d 1297, 1305 (7th Cir.1991) (rejecting argument by defendant charged with section 846 conspiracy that conspiracy is not easily understood; prosecution's proffer and court's colloquy, in which defendant admitted he engaged in drug transactions with two coconspirators, established understanding); United States v. Tobon-Hernandez, 845 F.2d 277, 279 (11th Cir.1988) (court's Rule 11 inquiry was "thorough" when it informed defendant that charges against him were limited to a conspiracy count and a possession count); United States v. Carter, 815 F.2d 827, 829 (1st Cir.1987) (the basic principle of a section 846 conspiracy is easily understandable by a defendant); see also Gomez-Cuevas, 917 F.2d at 1525 (in a non-846 case, admission by the defendant that he had "discussed the charges with his attorney and understood them," in combination with defendant's acknowledging commission of the elements of the charged crime, sufficient to show defendant's understanding of the charge).
 
 
 11
 In the change of plea hearing, the court discussed with Langham the nature of the conspiracy charge against him. First, it read a large part of the indictment covering two pages of the record, R.Supp.Vol. I, at 4-6, and then asked Langham,
 
 
 12
 THE COURT: Now, I will read the rest of it if you wish for me to. Is there any reason? You have read the whole thing, haven't you?
 
 
 13
 DEFENDANT: Yes, sir.
 
 
 14
 Id. at 6.
 
 
 15
 Later, after Langham had been sworn, the court and Langham had the following colloquy:
 
 
 16
 THE COURT: Well, it's alleged starting in '86, you and some others got together to possess with intent to distribute cocaine, crack cocaine, and that you did distribute it. Tell me what the facts are.
 
 
 17
 DEFENDANT: I wrote them down.
 
 
 18
 THE COURT: Would you tell me in your own words? Now, what you told me here is that yourself and others--
 
 
 19
 DEFENDANT: Right, because I never--I have never been with all of them at one time.
 
 
 20
 THE COURT: All right. At one time you were with some, another time with some somebody else and so forth.
 
 
 21
 DEFENDANT: That is why I wrote it like that.
 
 
 22
 THE COURT: From '86 to '89?
 
 
 23
 DEFENDANT: Yeah.
 
 
 24
 THE COURT: And those you were with, yourself and others, you went and bought cocaine, is that correct?
 
 
 25
 DEFENDANT: Yes, sir.
 
 
 26
 THE COURT: Los Angeles?
 
 
 27
 DEFENDANT: Yes, sir.
 
 
 28
 THE COURT: Houston?
 
 
 29
 DEFENDANT: Yes, sir.
 
 
 30
 THE COURT: And brought it back to Tulsa?
 
 
 31
 DEFENDANT: Yes, sir.
 
 
 32
 THE COURT: For the purpose of then--was it then taken from powder cocaine and made into crack cocaine?
 
 
 33
 DEFENDANT: Yes, sir.
 
 
 34
 THE COURT: And it's alleged--well, January of '88 you traveled to Houston and met with some people down there, did you, and bought two kilograms of cocaine.
 
 
 35
 DEFENDANT: I might, I'm not sure. I made a lot of trips.
 
 
 36
 THE COURT: You made a lot of trips?
 
 
 37
 DEFENDANT: I'm not sure of the dates.
 
 
 38
 THE COURT: All right. Well, it was in 1988 or around in that time period, was it?
 
 
 39
 DEFENDANT: Yes, depending on who told you. I don't know if it's true or not.
 
 
 40
 THE COURT: I'm reading from the indictment.... It says in January of 1988 you and two unindicted co-conspirators traveled to Houston and met with Charles Keith Jackson and given approximately two kilograms of cocaine by William Oliver. Did you get some cocaine from Oliver?
 
 
 41
 DEFENDANT: I didn't personally, I don't think, but I might have been with some people that got some.
 
 
 42
 THE COURT: Did you come back from Houston at one time with two kilograms of cocaine?
 
 
 43
 DEFENDANT: Yes.
 
 
 44
 THE COURT: And you came to Tulsa, did you.
 
 
 45
 DEFENDANT: Yes.
 
 
 46
 THE COURT: Was that cocaine changed from powder to cocaine base crack.
 
 
 47
 DEFENDANT: Yes, sir.
 
 
 48
 THE COURT: All right. And what about around August the 4th of 1988 in Los Angeles where Seventy-Seven thousand eight hundred and something dollars were possessed for the purpose of purchasing cocaine.
 
 
 49
 DEFENDANT: Might have been some of my money, but I didn't go up there.
 
 
 50
 ............................................................
 
 
 51
 ....................
 
 
 52
 * * *
 
 
 53
 THE COURT: You didn't go, but you think it might have been some of your money that was there?
 
 
 54
 DEFENDANT: (Witness nods head in the affirmative).
 
 
 55
 * * *
 
 
 56
 THE COURT: You know there are several persons named in the indictment as co-conspirators?
 
 
 57
 DEFENDANT: I'm just saying I'm guilty.
 
 
 58
 THE COURT: There are several of these people named in the indictment, aren't there?
 
 
 59
 DEFENDANT: Yes, sir.
 
 
 60
 THE COURT: And did you work with some of them.
 
 
 61
 DEFENDANT: Yes, sir.
 
 
 62
 THE COURT: Together to get the cocaine and bring it to Tulsa and sell it?
 
 
 63
 DEFENDANT: Yes, sir.
 
 
 64
 Id. at 13-16, 17-18.
 
 
 65
 This interchange between Langham and the court establishes that the court adequately informed Langham of the conspiracy charge, and that Langham knew its nature. Each contention that Langham has made--his not knowing that cocaine base was being referred to in the indictment and in the colloquy and his not knowing that he would be held responsible for the acts of his coconspirators--is refuted by the record.[1] He acknowledged that the trips to and from Los Angeles and Houston were for the purpose of bringing powder cocaine back to Tulsa and converting it into cocaine base (crack), and that he worked with "some" people to acquire the cocaine and distribute it in Tulsa. He responded affirmatively to the court's inquiry whether he distributed "cocaine base crack." See United States v. Slater, 971 F.2d 626, 629-30 (10th Cir.1992) (cocaine base and crack are the same thing). He also acknowledged that he had read the entire indictment.
 
 
 66
 Mr. Langham's change of plea occurred after one day of trial. Thus, his knowledge of the charge against him was reinforced by his exposure to the proceedings, including the actions of the court, the government, and his own counsel. He was not evasive in his responses at the change of plea hearing. He answered clearly and succinctly, and he did not show any confusion or hesitation (with the sole exception of his reluctance to reveal the identities of the alleged co-conspirators). Furthermore, Langham has a high school diploma and has completed two semesters of college. He has the requisite intelligence to comprehend a conspiracy charge. See United States v. Carter, 815 F.2d 827, 828 (1st Cir.1987). Under the totality of the circumstances, we hold that Langham has not shown that the court failed to comply with Rule 11 or that he did not understand the charge against him.
 
 III. WITHDRAWAL OF GUILTY PLEA
 
 67
 Langham next contends that the trial court erred in denying his motion to withdraw his plea of guilty. When Langham filed his motion to allow him to withdraw his plea, he stated that the trial of Carlton Jackson, an alleged coconspirator, had ended in a mistrial because of a hung jury, and that no other alleged co-conspirators had been convicted by a jury of the conspiracy charge to which Langham pled guilty. He argued that it would be unjust for him to be the only one to be held responsible for the conspiracy. R.Vol. I, Tab 59.
 
 
 68
 In denying Langham's motion to withdraw the guilty plea, the district court stated that
 
 
 69
 [t]he disposition of the case regarding codefendants has no bearing on Langham's sworn testimony before this Court in admitting the facts supporting the essential elements of the criminal offense charged in the indictment.... Defendant Langham independently made the decision to plead guilty during the trial of this case and has offered the Court no legally cognizable reason to permit withdraw [sic] of that plea at this time.
 
 
 70
 R.Vol. I, Tab 63.
 
 
 71
 Langham now contends that the district court applied the wrong standard when it found no "legally cognizable grounds" for the withdrawal of his guilty plea, and that there was a fair and just reason to withdraw the plea. He concludes that the district court therefore abused its discretion in denying the motion.
 
 
 72
 "[A] district court's denial of a motion to withdraw a plea of guilty is reviewed only for an abuse of discretion." United States v. Wade, 940 F.2d 1375, 1376 (10th Cir.1991); see United States v. Burger, 964 F.2d 1065, 1070 (10th Cir.1992). Rule 32(d) of the Federal Rules of Criminal Procedure provides that if a motion to withdraw a guilty plea is made before sentencing, the district court may grant the motion upon a showing by the defendant of any "fair and just reason." Burger, 964 F.2d at 1070-71; Wade, 940 F.2d at 1376-77; Fed.R.Crim.P. 32(d).
 
 
 73
 Determining whether there is a "fair and just reason" to withdraw the plea requires the application of seven factors: "(1) whether the defendant has asserted his innocence; (2) prejudice to the government; (3) delay in filing defendant's motion and, if so, the reason for the delay; (4) inconvenience to the court; (5) defendant's assistance of counsel; (6) whether the plea is knowing and voluntary; and (7) waste of judicial resources." United States v. Elias, 937 F.2d 1514, 1520 (10th Cir.1991); United States v. Hickok, 907 F.2d 983, 985 n. 2 (10th Cir.1990).
 
 
 74
 Mr. Langham cites a number of facts to support his contention that there was a fair and just reason to withdraw the plea: Jackson's trial ended in a hung jury; Langham did not enter his guilty plea knowingly and voluntarily; he was dissatisfied with his counsel and did not receive "close assistance" of counsel; few judicial resources were expended in the acceptance of his plea; and few judicial resources would be expended in trying Langham because a retrial of Jackson would be required in any event. Appellant's Opening Brief at 13-14.
 
 
 75
 Mr. Langham's argument is unpersuasive. We have already dismissed his contention that he did not enter his plea knowingly and voluntarily.[2] As for his contention that the hung jury in Jackson's trial mandates granting of his motion, we agree with the district court that it would be improper to consider the guilt or innocence of co-conspirators in assessing whether a motion to withdraw should have been granted. The only issue relating to actual guilt or innocence that we may consider is whether the defendant has asserted his innocence, which Langham has not. See Elias, 937 F.2d at 1518.
 
 
 76
 Furthermore, we find little in the record to support Langham's assertion that the assistance rendered him by counsel was so lacking as to support a fair and just reason for withdrawing the guilty plea. His contention is predicated on his assertion that at the change of plea hearing he expressed both his dissatisfaction with counsel, R.Supp.Vol. I, at 12, and that he felt he did not need counsel. However, Langham does not raise a constitutional ineffective assistance claim. Given that his counsel's assistance was constitutionally adequate, we conclude that such assistance was also adequate for purposes of the "fair and just reason" test. See Elias, 937 F.2d at 1520 (court's prior conclusion that there was effective assistance of counsel under the constitutional standard precluded defendant from citing ineffective assistance claim in support of motion to withdraw).
 
 
 77
 It is possible, as Langham contends, although by no means certain, that if Langham's plea was permitted to be withdrawn he would have been tried together with Jackson at Jackson's scheduled retrial. Arguably that would reduce inconvenience and waste of judicial resources, and, for that matter, any potential prejudice the government may have suffered as a result of the change in plea. But both inconvenience and a waste of resources would inevitably result to a substantial degree. In any event, however, given that we have yet to find any basis for Langham's motion to withdraw independent of whether any inconvenience or burden would result, the point is not dispositive. Cf. Hickok, 907 F.2d at 986 ("Unless a defendant presents a 'fair and just reason' for the withdrawal, the court need not consider prejudice to the government."). But see Wade, 940 F.2d at 1379 (court considers that government would be prejudiced if withdrawal allowed, even though defendant did not present other evidence of a fair and just reason to withdraw); Elias, 937 F.2d at 1520 (same). Finally, the district court's use of the phrase "no legally cognizable reason" was simply a surrogate for the applicable principles and standard. For these reasons, we conclude that the district court did not abuse its discretion in denying Langham's motion to withdraw his guilty plea.
 
 IV. SENTENCING
 
 78
 Mr. Langham challenges his sentence on alternative grounds. First, he argues that the district court sentenced him to life imprisonment under 21 U.S.C. § 841(b)(1)(A), and the sentence must be set aside because the government did not file the required information in advance.[3] The government does not dispute non-compliance with the filing requirement of the statute. Its position is that the court sentenced Mr. Langham under the Guidelines, not section 841. Alternatively, Mr. Langham contends that his life sentence under the Guidelines must be remanded for resentencing because the district court failed to state on the record its reasons for the sentence as required by 18 U.S.C. § 3553(c). Reviewing these contentions de novo, United States v. Tisdale, 921 F.2d 1095, 1100 (10th Cir.1990), cert. denied, 112 S.Ct. 596 (1991); United States v. Smith, 900 F.2d 1442, 1445 (10th Cir.1990); 18 U.S.C. § 3742(a), we disagree that the court relied upon § 841 or that a remand is necessary because the district court failed to make the required record.
 
 
 79
 We have carefully reviewed the record and conclude that the district court sentenced Mr. Langham under the Guidelines. The problem regarding section 841 arose because the initial presentence report erroneously proceeded on that basis. The error was corrected after an objection was filed; but, understandably, the district court was momentarily sidetracked as it proceeded through the report. The probation officer brought the matter to the court's attention, R.Supp.Vol. III, at 9, and sentencing proceeded along lines of the presentence report as corrected. Thus, the court refused a request to depart downward, and discussed the authority of the Guidelines. Id. at 10-14. And, in connection with the life sentence, imposed a five year period of supervised release consistent with Guideline sentencing. Id. at 14. In addition, the court began the hearing by tentatively placing Mr. Langham at base offense level (BOL) 42, then heard objections which had been filed bearing on that determination in the amended presentence report. There was no error on this point.
 
 
 80
 We also conclude that no remand of Mr. Langham's sentence is necessary because no reasons were stated. Section 3553(c), Title 18, provides that when a sentence is imposed under the Guidelines: "The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence...." Various purposes are served by this requirement, including review on appeal and data for the Sentencing Commission, but the statement of reasons is mandatory.[4] See United States v. Underwood, 938 F.2d 1086, 1088 (10th Cir.1991); United States v. Garcia, 919 F.2d 1478, 1480 (10th Cir.1990); see also United States v. Slater, 971 F.2d 626, 634 (10th Cir.1992).
 
 
 81
 Here, consistent with both the Guidelines and section 3553(c), the district court placed Mr. Langham at BOL 42, heard objections, and made an express fact finding that "at least 15 kilos of crack were attributable to [Mr. Langham]." R.Supp.Vol. III, at 6.[5] From there the proceeding was less clear. The court sentenced Mr. Langham to life in prison pursuant to BOL 43, but articulated no reason in open court for moving from BOL 42 to 43. The presentence report identifies two ways: a two level increase under U.S.S.G. § 2D1.1(b)(1) for the offense characteristic of being in possession of a firearm during the commission of the offense; and a three level upward adjustment under U.S.S.G. § 3B1.1(b) for having a managerial or supervisory role.[6] While the district court identified neither orally, it contemporaneously filled out the "statement of reasons" form as part of the judgment, expressly adopting "the factual findings and guideline application in the presentence report." On this record, that expression of reasons is enough to avoid remand.
 
 
 82
 Even if the statement in open court requirement of the statute was technically violated, the sentence and the reasons are clear. Following the Supreme Court's decision in Williams v. United States, 112 S.Ct. 1112, 1121 (1992), we stated in United States v. O'Dell, 965 F.2d 937, 939 (10th Cir.1992): "[A] remand to the district court is necessary ... only when the court of appeals believes the district court would not have imposed the same sentence in the absence of the error...."
 
 
 83
 We have no reason to believe that the sentence imposed on Mr. Langham in the first instance would be any different on remand. In fact, there are strong reasons in addition to the form explanation referred to above why it will be the same. For instance, Mr. Langham did not object to the two level increase under U.S.S.G. § 2D1.1(b)(1) on the recited facts that he had a pistol in the pocket of his coat, and there was one under the cushion where he had been sitting. Those facts, therefore the increase, must be deemed admitted due to the lack of any objection below, either to the presentence report or at the hearing. See O'Dell, 965 F.2d at 938.
 
 
 84
 Additionally, Mr. Langham did not object to the lack of a two level reduction in the presentence report for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, and offered nothing at the sentencing hearing in support of such an entitlement. The defendant bears the burden of proving entitlement. United States v. Chimal, 976 F.2d 608, 613 (10th Cir.1992), cert. denied, 1992 WL 390718 (U.S., Feb. 22, 1993); United States v. Spedalieri, 910 F.2d 707, 712 (10th Cir.1990). Thus, that avenue appears closed. Indeed, on this record, we could not uphold the grant of a downward adjustment by the district court. Certainly the entry of a guilty plea does not automatically entitle a defendant to a section 3E1.1 adjustment, and a plea after one day of trial diminishes the consideration the plea is given even when the defendant attempts to carry the burden by properly placing the matter in issue before the court. See U.S.S.G. § 3E1.1, comment. (n. 1-3) (Nov. 1990).
 
 
 85
 Here, we can tell how and why the court moved from BOL 42 to 43. In short, the record is clear, and the sentence stands.
 
 CONCLUSION
 
 86
 Accordingly, there was no error in the proceedings below. We therefore AFFIRM the denial of Mr. Langham's motion to withdraw his guilty plea, and AFFIRM the judgment of conviction and sentence entered on the plea.
 
 
 
 *
 The Honorable E.L. Mechem, Senior Judge, United States District Court for the District of New Mexico, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Langham has also contended that he was not properly informed that the total amount of cocaine base within the scope of the conspiracy could be attributed to him under the sentencing guidelines. However, the amount of drugs involved in a conspiracy to distribute is irrelevant to the defendant's guilt. United States v. Musa, 946 F.2d 1297, 1305 (7th Cir.1991); United States v. Young, 927 F.2d 1060, 1064 (8th Cir.), cert. denied, 112 S.Ct. 384 (1991); see also United States v. Rhodes, 913 F.2d 839, 843 (10th Cir.1990) (court not required to inform defendant of applicable Sentencing Guideline range before accepting plea)
 
 
 [2]
 Langham embellishes his involuntariness argument with a discussion about how he was confused about the length of his sentence. He cites this confusion as grounds to withdraw the plea, despite the conceded fact that the district court fully complied with Rule 11's requirement that the defendant be advised of the statutory minimum and maximum sentence. We cannot consider Langham's alleged "confusion" about the length of his sentence as grounds for withdrawal while contemporaneously concluding that the district court ensured that the original plea was voluntary and knowing
 
 
 [3]
 If the government intends to seek enhanced punishment under 21 U.S.C. § 841(b)(1)(A) because the defendant has been convicted of prior drug offenses, 21 U.S.C. § 851(a)(1) requires the government to file an information with the court, before the entry by the defendant of a guilty plea, stating in writing the previous convictions to be relied upon. Compliance with section 851 is jurisdictional in this circuit. United States v. Novey, 922 F.2d 624, 627 (10th Cir.), cert. denied, 111 S.Ct. 2861 (1991)
 
 
 [4]
 Reasons relating to adjustments underlying the sentence are treated differently than the sentence itself, and differing circumstances will vary the need both for reasons and for findings. Compare United States v. Caruth, 930 F.2d 811, 816 (10th Cir.1991), with United States v. Underwood, 938 F.2d 1086, 1091-92 (10th Cir.1991)
 
 
 [5]
 The presentence report calculated Mr. Langham's criminal history category at level IV. That level has not been disputed, and is not material to the issue here
 
 
 [6]
 Offense levels above BOL 43 are treated as level 43. U.S.S.G. Sentencing Table, comment. (n. 2) (Nov. 1990)