51 F.3d 287
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald Lamar GORE, Defendant-Appellant.
 No. 94-3140.
 United States Court of Appeals, Tenth Circuit.
 March 28, 1995.
 
 Before ANDERSON, ALDISERT,[2] and HOLLOWAY, Circuit Judges.
 
 
 1
 The only issue before us in this appeal is whether the district court abused its discretion in denying Ronald Lamar Gore's motion to withdraw his guilty plea to Count II of an indictment charging him with armed bank robbery (Count I), and using a firearm in connection with that offense (Count II), in violation of 18 U.S.C. 924(c).
 
 
 2
 On August 3, 1993, Mr. Gore appeared in district court with counsel, and entered a plea of guilty to the charges referred to above. At the plea hearing, Mr. Gore was placed under oath, and the district court conducted a searching and exhaustive inquiry regarding, among other things, Mr. Gore's understanding of the charges and consequences, and the voluntariness of his plea. A written plea agreement, signed by Mr. Gore and his counsel, was submitted to the court, explained by counsel, and explicitly adopted by Mr. Gore. Both the court's explanation of the charges, which Mr. Gore stated he understood, and the written plea agreement, which Mr. Gore stated he had discussed with his counsel and understood, recited that Mr. Gore was carrying a gun during the robbery.
 
 
 3
 Counsel for the government then recited evidence which the government would introduce at trial, including the following:
 
 
 4
 MR. STREEPY: ... [T]wo men came into the bank and both were carrying firearms. A taller man was carrying a shotgun, which he pulled out from underneath his coat, and the shorter man was carrying a semiautomatic pistol. Ms. Rinehart later looked at a photographic lineup and identified Mr. Gore, the defendant, as the shorter man who was carrying the semiautomatic pistol.
 
 
 5
 Another employee, Mary Hart, had just left for lunch and she walked out in the parking lot and saw a strange car with Ms. Woolridge, the co-defendant, sitting in that car. She thought that was unusual. So she went back into the bank through the employee's door. As she walked through the bank, Mr. Gore grabbed her by the arm and pulled her into the lobby area. He then motioned for Ms. Rinehart to step out from behind the teller counter and he asked her where is your vault. Ms. Rinehart replied, "We don't have a vault." So Mr. Gore said, "Well, where is the money?"
 
 
 6
 Ms. Rinehart then pointed to the teller drawers and the taller man with the shotgun, that's Mr. McCoy, directed the women down a short hallway into a small storage room. Mr. McCoy remained standing in the doorway and told the women to stay there. After several minutes, they heard Mr. Gore, the shorter man with the pistol, shout "Let's go." And Mr. McCoy, who had the shotgun, walked away.
 
 
 7
 * * *
 
 
 8
 As I stated, Ms. Rinehart identified the defendant from the photo lineup as the shorter man who held the pistol during the robbery, and both Ms. Rinehart and Ms. Hart would testify that they were in fear for their safety and their lives by these two men having firearms during this robbery. And they told the men where the money was because they were intimidated by the firearms.
 
 
 9
 R. Vol. 2 at 22-23, 24.
 
 
 10
 The following colloquy between the court, Gore, and Gore's counsel then occurred:
 
 
 11
 THE COURT: Mr. Harris, do you have any comments on what the Government says it has in the way of evidence against your client?
 
 
 12
 MR. HARRIS: Judge, I have gone out to the bank in Edgerton and reviewed the scene. I have taken all of the investigative reports, not only reviewed them repeatedly myself, but have taken them and reviewed them with Mr. Gore, and we agree that the Government has--while we probably don't agree that the facts would be precisely what Mr. Streepy has represented, we do agree that the evidence as outlined by Mr. Streepy would be presented by the Government at trial and the witnesses would testify as he represented that they would, and that that evidence would be sufficient to result in a verdict of guilty against my client on both of the charges with which he is facing in the indictment.
 
 
 13
 Q. (By the Court) Mr. Gore, do you have any disagreement with what the Government says it has in the way of evidence against you on these charges?
 
 
 14
 A. Yes. I have something to say in reference to Ms. Rinehart being grabbed by the arm. At no time I never touched her.
 
 
 15
 Q. You never touched Ms. Rinehart?
 
 
 16
 A. I never touched her.
 
 
 17
 Q. Other than that one clarification, or dispute, do you have any other disagreement with what the Government says it has in the way of evidence against you?
 
 
 18
 A. No, I don't. Only that.
 
 
 19
 Q. Okay. Are you admitting to the Court, then, that you did, in fact, do exactly what counsel--what Mr. Streepy has indicated, except for the matter with respect to touching Ms. Rinehart?
 
 
 20
 A. Correct.
 
 
 21
 R. Vol. 2 at 24-26.
 
 
 22
 More than six months later, on February 15, 1994, Gore filed a motion to withdraw his plea of guilty to the use of a firearm count. He contended that he was not armed during the robbery, and that he misunderstood the applicable principle of law. That is, he believed that if his co-defendant was carrying a gun during the robbery, that would be attributable to him so it made no difference for purposes of his guilty plea whether he was or was not personally carrying a gun.
 
 
 23
 The district court held hearings on Gore's motion on April 11, 1994, and April 25, 1994, and considered the motion and the record evidence pursuant to Fed.R.Crim.P. 32(d), and in light of the factors set out in United States v. Elias, 937 F.2d 1514, 1520 (10th Cir.1991), and United States v. Rhodes, 913 F.2d 839, 845 (10th Cir.1990), cert. denied 498 U.S. 1122 (1991). The court concluded that Gore had not shown a fair and just reason, and had failed in other respects, to justify allowing his guilty plea to be withdrawn.
 
 
 24
 We have reviewed the transcripts of the guilty plea hearing and hearings on the motion to withdraw, dated, respectively, August 3, 1993, April 11 and April 25, 1994, as well as the written plea agreement signed by Mr. Gore, which recites the facts of the crime including the fact that Gore was armed. We have also reviewed the findings of the district court.
 
 
 25
 We cannot improve on the careful, thorough, and able analysis of the district court. We adopt it as our own, and, while fully cognizant that motions to withdraw pleas prior to sentencing should be treated with liberality, United States v. Wade, 940 F.2d 1375, 1377 (10th Cir.1991), we conclude that the district court did not abuse its discretion in denying Mr. Gore's motion to withdraw his plea of guilty to Count II of the charge.
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The Honorable Ruggero J. Aldisert, Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation